COLORADO COURT OF APPEALS                                    2017COA22

Court of Appeals No. 16CA0267
El Paso County District Court No. 15CV416
Honorable Edward S. Colt, Judge

Campaign Integrity Watchdog, LLC,

Plaintiff-Appellant,

v.

Alliance for a Safe and Independent Woodmen Hills and Sarah Brittain Jack,

Defendants-Appellees.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE FREYRE
Nieto, J.*, concurs
Kapelke, J.*, concurs in part and dissents in part

Announced February 23, 2017

Matthew Arnold, as Authorized Representative of Campaign Integrity
Watchdog, LLC

Law Office of Robert S. Gardner, Robert S. Gardner, Laura Gardner, Colorado
Springs, Colorado, for Defendant-Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2016.

¶ 1     In this action involving the Fair Campaign Practices Act (FCPA), §§ 1-45-101 to -118, C.R.S. 2016, and the Campaign and Political Finance Amendment, Colo. Const. art. XXVIII (Amendment), plaintiff, Campaign Integrity Watchdog LLC (CIW), appeals the district court's order dismissing its complaint to enforce the decision of an Administrative Law Judge (ALJ) against defendant, Alliance for a Safe and Independent Woodmen Hills (Alliance), based on the expiration of the statute of limitations. We are asked, as a matter of first impression, to determine the meaning of the word "violation" in § 9(2)(a) of the Amendment, as both parties agree that this word triggers the statute of limitations. We conclude that "violation" means the act(s) of breaking or dishonoring the FCPA or Amendment and, thus, that the statute of limitations begins running the day following the last such act. Because the complaint and attached ALJ decision state a plausible claim that the statute of limitations had not yet run, we reverse the district court's order granting Alliance's motion to dismiss and remand for reinstatement of CIW's complaint.

## I.     Background

¶ 2     This case concerns various campaign finance violations that occurred in the 2014 Woodmen Hills Metropolitan District board of directors' election.  Before the election, Alliance was established for the purpose of working "for the common good and general welfare of" the Woodmen Hills community.  Ron Pace, a resident of Woodmen Hills, ran as a candidate for election to the district's board of directors.  In the months preceding the election, Alliance sent postcards directed at undermining Pace's character and political platform and created Facebook posts that did the same.

¶ 3     Believing that the actions of Alliance violated the FCPA, CIW filed a complaint with the Secretary of State (Secretary) under § 9 of the Amendment.  The Secretary then referred the complaint to the Office of Administrative Courts.  After a hearing, the ALJ found that Alliance was a "political committee" under the FCPA and that it was therefore required to register with the Secretary and to comply with all filing and reporting requirements.[1]  In a written decision issued

---

[1] CIW also asserted that Alliance violated other provisions of the FCPA but the ALJ concluded that Alliance did not commit these additional violations, and CIW did not appeal that ruling.

on August 8, 2014, the ALJ found that Alliance's failure to register as a political committee and to file the required reports constituted violations of the FCPA. The ALJ also found that Alliance should have registered with the Secretary beginning on March 17, 2014, and found that Alliance had failed to comply with the registration and reporting requirements as of the first day of the hearing, June 26, 2014. It imposed a fine of $9650 for these violations[2] and ordered Alliance to register with the Secretary and file all required reports.

¶ 4     Alliance filed a motion to stay the decision which the ALJ denied on August 20, 2014. Two days later, Alliance filed a notice of appeal and a motion for stay of the decision in this court. A motions division of this court denied the motion for stay, and on November 21, 2014, Alliance withdrew its appeal. Thereafter, the Secretary did not pursue enforcement of the ALJ's decision beyond sending Alliance invoices for the monetary penalties.

¶ 5     On September 15, 2015, CIW filed a complaint in El Paso District Court to enforce the ALJ's decision. CIW attached a copy of

---

[2] This reflects a fine of $50 per day.

3

the decision to the complaint. Alliance filed a C.R.C.P. 12(b)(5) motion to dismiss alleging that the Amendment's one-year statute of limitations barred CIW's enforcement action. The district court dismissed CIW's complaint based on its conclusion that CIW's complaint was time barred under the Amendment.

## II. Discussion

¶ 6 This appeal requires us to decide two issues: (1) the meaning of the word "violation" in § 9(2)(a) of the Amendment and (2) how to apply our interpretation to Alliance's motion to dismiss.

¶ 7 At issue here is the limitations period described in § 9 of the Amendment, which provides as follows:

> (2)(a) Any person who believes that a violation of section 3, section 4, section 5, section 6, section 7, or section 9(1)(e), of this article, or of sections 1-45-108, 1-45-114, 1-45-115, or 1-45-117 C.R.S., or any successor sections, has occurred may file a written complaint with the secretary of state no later than one hundred eighty days after the date of the alleged violation. The secretary of state shall refer the complaint to an administrative law judge within three days of the filing of the complaint. The administrative law judge shall hold a hearing within fifteen days of the referral of the complaint, and shall render a decision within fifteen days of the hearing. The defendant shall be granted an extension of up to thirty

days upon defendant's motion, or longer upon a showing of good cause. If the administrative law judge determines that such violation has occurred, such decision shall include any appropriate order, sanction, or relief authorized by this article. The decision of the administrative law judge shall be final and subject to review by the court of appeals, pursuant to section 24-4-106(11), C.R.S., or any successor section. The secretary of state and the administrative law judge are not necessary parties to the review. *The decision may be enforced by the secretary of state, or, if the secretary of state does not file an enforcement action within thirty days of the decision, in a private cause of action by the person filing the complaint. Any private action brought under this section shall be brought within one year of the date of the violation in state district court.* The prevailing party in a private enforcement action shall be entitled to reasonable attorney fees and costs.

Colo. Const. art. XXVIII, § 9 (emphasis added).

¶ 8 Both parties agree that the statute of limitations is triggered by the date of "violation" in § 9(2)(a) of the Amendment, but disagree about what the term "violation" means. CIW offers several possible meanings of "violation" and contends that it could refer to (1) the violation(s) of the FCPA giving rise to the ALJ's decision; (2) an ongoing failure to pay the fine imposed by the ALJ's decision; or (3) the "final judgment" entered after any appeal. Alternatively, CIW

5

asserts that we should read a tolling provision into the Amendment to avoid the "absurd" result of an appeal, specifically authorized by the Amendment, precluding a private cause of action. CIW argues that an appeal, which often takes longer than one year to complete, would foreclose a private enforcement action. It reasons that the exercise of this appellate right could foreclose private actions altogether.

¶ 9 Alliance responds that the statute of limitations language is unambiguous and that the word "violation" refers only to the act or acts which gave rise to the penalty. It further contends that we should not read a tolling provision into § 9 of the Amendment where one does not exist. It reasons that, despite the fact that in some circumstances a cause of action may be foreclosed, this result is not absurd so as to justify a deviation from the plain language.

¶ 10 We reject CIW's contrary arguments and conclude that the plain language of the Amendment unambiguously creates a one-year limitations period that begins to run from the date of the act or acts (or failure to act) violating the FCPA that formed the basis of the complaint. We acknowledge that reading "violation" according

6

to its ordinary and common meaning may preclude a private cause of action in some circumstances; however, our legal duty is to apply the plain language of the Amendment as written and to refrain from adding language the electorate did not include. Because it is possible to bring an enforcement action within one year of a violation, we conclude that our interpretation, based on the plain language of the Amendment, does not lead to an absurd result. In applying our interpretation to CIW's complaint, however, we conclude that the district court erred when it dismissed the action based on the statute of limitations.

### A. Constitutional Interpretation

¶ 11 We review de novo the interpretation of a constitutional provision. *Patterson Recall Comm., Inc. v. Patterson*, 209 P.3d 1210, 1214 (Colo. App. 2009). In construing constitutional provisions, we are guided by the general principles of statutory construction. *Id.* at 1215. This means that when interpreting a constitutional amendment adopted by citizen's initiative, we "give effect to the electorate's intent in enacting the amendment." *Colo. Ethics Watch v. Senate Majority Fund, LLC*, 2012 CO 12, ¶ 20 (quoting *Davidson*

*v. Sandstrom*, 83 P.3d 648, 654 (Colo. 2004)). To determine what the voters intended, we "give words their ordinary and popular meaning." *Id.* (quoting *Davidson*, 83 P.3d at 654). Courts should not engage in a narrow or overly technical construction of the language. *Rocky Mountain Animal Def. v. Colo. Div. of Wildlife*, 100 P.3d 508, 514 (Colo. App. 2004). We assume that voters chose words and phrases intentionally. *Senate Majority Fund, LLC*, ¶ 28. If the language of an amendment is clear and unambiguous, then it must be enforced as written. *Id.* at ¶ 20.

¶ 12 We must consider the Amendment as a whole and, when possible, adopt an interpretation that harmonizes its different provisions. *Patterson*, 209 P.3d at 1214. We also must favor a construction of a constitutional amendment that will render every word operative, rather than one that may make some words meaningless or superfluous. *Id.* However, in rare circumstances, even where the plain language is clear, we may depart from the plain meaning of the amendment to avoid an absurd result. *See Guido v. Indus. Claim Appeals Office*, 100 P.3d 575, 577 (Colo. App. 2004); *see also Rocky Mountain Animal Def. v. Colorado Div. of*

8

*Wildlife*, 100 P.3d 508, 514 (Colo. App. 2004) (when interpreting a constitutional amendment "[c]ourts should avoid an unreasonable interpretation or one that produces an absurd result.").

¶ 13 The Amendment is a comprehensive initiative regulating campaign financing. *See Sanger v. Dennis*, 148 P.3d 404, 407 (Colo. App. 2006). Its purpose is to require participants in the election process, such as political committees, to comply with, among other things, registration and disclosure requirements. *See* Colo. Const. art. XXVIII, § 7; *see also Colo. Ethics Watch v. Gessler*, 2013 COA 172M, ¶ 5.

¶ 14 The Amendment may be enforced by the Secretary or "by the person filing the complaint." A person seeking enforcement must file a written complaint with the Secretary within 180 days of the alleged violation. The Secretary must then refer the complaint to an ALJ to determine whether a violation has occurred and, if so, to impose the appropriate sanction. Either party may directly appeal the ALJ's decision to this court. The Amendment makes no mention of a stay pending appellate review, but instead provides the

Secretary with the immediate authority to enforce the ALJ's decision.[3]

¶ 15    The person who initiates the complaint may seek enforcement of the ALJ's decision only if the Secretary "does not file an enforcement action within thirty days of the decision."  To do so, such person must file a complaint in state district court "within one year of the date of the violation."

¶ 16    The Amendment does not define "violation"; therefore we look to its plain and ordinary meaning.  *State v. Nieto*, 993 P.2d 493, 500 (Colo. 2000) (courts give words their plain and ordinary meaning and assume that the governing body meant what it clearly said).  A violation is "[t]he act of breaking or dishonoring the law; the contravention of a right or duty."  Black's Law Dictionary 1800 (10th ed. 2014).  We therefore disagree with CIW's contentions that "violation" refers to the ALJ's decision after appellate review, or to a party's failure to pay a fine included in the ALJ's decision.

---

[3] We recognize that the Secretary has promulgated a rule stating that it may enforce the ALJ's decision and that it will not enforce an ALJ's decision that is pending appeal.  *See* Dep't of State Reg. 18.3, 8 Code Colo. Regs. 1505-6.

¶ 17    Indeed, the Amendment's plain language contradicts CIW's assertion that the term "violation" is synonymous with the ALJ's "decision" because it clearly differentiates the findings of the ALJ by using the word "decision" to describe it. Moreover, the Amendment's first sentence specifically identifies those portions of the FCPA and Amendment that provide a basis for the complaint. Because we must assume the electorate did not carelessly choose its language, and because the electorate chose the word "decision" to describe the ALJ's legal findings, we conclude that the word "violation" unambiguously refers to the conduct which contravened the FCPA or the Amendment and not to the ALJ's decision finding a violation and assessing a penalty.

¶ 18    Moreover, we cannot say that "violation" in this context is subject to more than one meaning or that the words "violation" and "decision" were meant to be used interchangeably. *Williams v. Dep't of Pub. Safety*, 2015 COA 180, ¶ 36 ("An ambiguous statute is one fairly susceptible of more than one interpretation.") (citation omitted). The Amendment uses the term "violation" four times, twice to describe the acts that may give rise to a complaint, once

11

when addressing the ALJ's legal conclusion that a law violation has occurred, and finally when discussing the statute of limitations. Each of these instances is distinguishable from the use of the word "decision."

¶ 19     In the Amendment, "decision" refers to the ALJ's conclusions finding a violation, imposing a sanction, and identifying the relief that the Secretary or person filing the complaint may enforce. Thus, we cannot say that the term "violation" is ambiguous. Because the word is used multiple times to describe the events upon which the legal decision rests, we construe "violation" to mean the same thing in each instance — the act or acts of breaking or dishonoring the statutory and constitutional provisions enumerated in the first sentence of Colorado Constitution article XXVIII, section 9(2)(a).  Accordingly, we reject CIW's assertions that "violation" means the ALJ's decision or the unpaid fine resulting from that decision.

¶ 20     For the same reasons, we reject CIW's argument that the word "violation" must mean the final judgment following appellate review or must be construed to include a tolling provision.  We note that

the Amendment contains no such language, and we are not at liberty to rewrite the Amendment. *In re 2000-2001 Dist. Grand Jury in & for First Judicial Dist.*, 97 P.3d 921, 924 (Colo. 2004) (where a statute is silent on a noncollateral matter, we must interpret the provisions as written and may not write in new language not contemplated by the drafters of the provision).

¶ 21 The electorate chose to tie the limitations period of a private enforcement action to the violation, not to the finality of the judgment to be enforced. It also chose not to explicitly provide for a tolling of that limitations period in the plain language of the Amendment.[4] We must interpret the Amendment as written and may not add language that was not contemplated by the drafters. *US Fax Law Ctr., Inc. v. Henry Schein, Inc.*, 205 P.3d 512, 516-17 (Colo. App. 2009) ("An inference drawn from congressional silence

[4] Our opinion should not be construed as foreclosing a party from requesting equitable tolling of the limitations period. We only address tolling insofar as we conclude that the Amendment's plain language does not explicitly provide this relief. *See, e.g., Cochran v. W. Glenwood Springs Sanitation Dist.*, 223 P.3d 123, 126 (Colo. App. 2009) (the plain language of § 24-10-109(5), C.R.S. 2016, provides for a tolling provision); *see also* § 24-50-112.5, C.R.S. 2016 (the ninety-day period "shall be tolled until there is a final agency action by the board . . .").

certainly cannot be credited when it is contrary to all other textual and contextual evidence of congressional intent." (quoting *Burns v. United States*, 501 U.S. 129, 136 (1991))); *see also Bruce v. City of Colorado Springs*, 129 P.3d 988, 993 (Colo. 2006) (a court will not read a statute to create an exception that the plain language does not suggest, warrant, or mandate).

¶ 22    We acknowledge CIW's argument that an appellate decision, when sought, may not be issued within the one-year statute of limitations. Thus, if the word "violation" does not include final judgment after appeal or a tolling provision, a private enforcement action may be precluded. However, we conclude that this is but one possible scenario. For example, if no appeal is filed or if the appeal is resolved in less than one year, a person is not time barred from filing an enforcement action. Moreover, nothing in the Amendment precludes a person from filing a complaint in the district court if the Secretary does not file an action itself within thirty days of the ALJ's decision. The Secretary's internal rule refusing to enforce actions pending the outcome of an appeal has no bearing on a person's right to file an enforcement action — once

thirty days have passed without the Secretary filing an enforcement action, the person who filed the complaint may do so in order to preserve his or her rights under the Amendment. In such circumstances, the district court judge may stay the action pending the outcome of the appeal.

¶ 23    Therefore, because many times it *will* be possible to enforce an ALJ's decision within one year of the violation, we conclude the result is not "absurd" so as to justify reading a tolling provision into the Amendment where it is otherwise silent. *Guido*, 100 P.3d at 577. Moreover, our duty is not to ensure that parties have a cause of action, but is instead to interpret unambiguous language as written. *See Williams*, ¶ 34 ("As for judicial economy, policy considerations are subordinate to giving effect to unambiguous statutory language."); *People in Interest of D.R.W.*, 91 P.3d 453, 458 (Colo. App. 2004) ("We reject policy considerations in favor of the plain language of a statute."); *see also Henry Schein, Inc.*, 205 P.3d at 516-17 ("An inference drawn from congressional silence certainly cannot be credited when it is contrary to all other textual and

15

contextual evidence of congressional intent." (quoting *Burns*, 501 U.S. at 136).

¶ 24 Accordingly, because the plain language of the Amendment is clear, we conclude that the date of "violation" means the date or dates the FCPA or Amendment is violated, and that a private cause of action to enforce an ALJ's decision must be filed within one year of that date.

### B. Dismissal under C.R.C.P. 12(b)(5)

¶ 25 Having concluded that the statute of limitations runs from the date or dates a violation occurs, we must now determine whether the district court's order granting Alliance's motion to dismiss properly identified that date. We begin by noting that a "violation" could either be discrete or continuing. This issue, however, is not before us. Rather, viewing CIW's complaint in the light most favorable to CIW, we must conclude that the complaint could be read to allege a continuing violation, that Alliance assumed it was a continuing violation in its motion to dismiss, and that the district court's order assumed the violation was continuing. Thus, we assume, for purposes of this analysis only, that the violation was

continuing, and we focus on whether the complaint and attached ALJ decision state a plausible claim that the violation continued beyond June 26, 2014, the date relied on by the district court. In doing so, we express no opinion on whether the specific violations of failure to register and failure to report constitute discrete offenses occurring on the dates the filings and reports were due, or continuing offenses, an issue never raised or briefed by the parties. We also recognize that the district court did not have the benefit of our interpretation of "violation" when ruling on Alliance's motion.

¶ 26    We begin by acknowledging that a case should be dismissed under Rule 12(b)(5) based on a statute of limitations only in exceptional circumstances. Indeed, CIW urges us to reverse on this basis, arguing that a statute of limitations defense is not properly brought in a Rule 12(b)(5) motion.

¶ 27    To be sure, defenses based on statutes of limitation are affirmative in nature, and must be raised by responsive pleading. C.R.C.P. 8(c). Typically, they cannot be raised in a Rule 12(b)(5) motion to dismiss when the affirmative defense has not been raised in the pleadings. *McPherson v. McPherson*, 145 Colo. 170, 358 P.2d

17

478 (1960); *Smith v. Kent Oil Co.*, 128 Colo. 80, 81, 261 P.2d 149, 150 (1953); *McIntire & Quiros of Colo., Inc. v. Westinghouse Credit Corp.*, 40 Colo. App. 398, 400, 576 P.2d 1026, 1026 (1978). "However, divisions of this court have recognized an exception 'where the bare allegations of the complaint reveal that the action was not brought within the required statutory period.'" *Wagner v. Grange Ins. Ass'n*, 166 P.3d 304, 307 (Colo. App. 2007) (quoting *SMLL, L.L.C. v. Peak Nat'l Bank*, 111 P.3d 563, 564 (Colo. App. 2005)); *see also Coors Brewing Co. v. Floyd*, 978 P.2d 663, 665 (Colo. 1999) ("Such motions 'are viewed with disfavor.'" (quoting *Dorman v. Petrol Aspen, Inc.*, 914 P.2d 909, 911 (Colo. 1996))).

¶ 28    We review a district court's ruling on a Rule 12(b)(5) motion to dismiss de novo. *Id.* Generally, in ruling on a Rule 12(b)(5) motion, a court may consider only those matters stated in the complaint and must accept all allegations of material fact as true, viewing the allegations in the light most favorable to the plaintiff. *Coors Brewing Co.*, 978 P.2d at 665. However, when the plaintiff attaches documents to the complaint, a court may consider those documents in addition to the allegations stated in the complaint. *Lambert v.*

18

*Ritter Inaugural Comm., Inc.*, 218 P.3d 1115, 1119 (Colo. App. 2009). "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Warne v. Hall*, 2016 CO 50, ¶ 19 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Under this standard, a party must plead sufficient facts that, if taken as true, suggest plausible grounds to support a claim for relief. *Warne*, ¶ 24.

## 1. Complaint Allegations

¶ 29 CIW filed its complaint on September 15, 2015, seeking enforcement of the ALJ's August 8, 2014, decision. The complaint alleged that the ALJ had found violations of the FCPA, had imposed a fine for the violations, and had given Alliance thirty days from August 8 to comply with its decision. It further alleged that "no part of said Order has been paid or satisfied," and that Alliance was "continuing operations in defiance of the law."

¶ 30 The attached ALJ decision revealed that Alliance had violated two provisions of the FCPA — registration and reporting as required by § 1-45-108, C.R.S. 2016. In the "Sanction" section of the decision, the ALJ found that "[r]egistration was due on March 17,

2014, but not filed as of the first day of the hearing, June 26, 2014; a period of 104 days, for a total of $5,050." A footnote to this sentence stated: "Due to the power outage on June 26th, the hearing could not be concluded in one day and had to be continued for a month. Because this delay was beyond Alliance's control, it would be unfair to extend Alliance's liability to the second hearing day."

¶ 31 The ALJ also found that contribution reports were due "by April 15, 2014," and "due June 5, 2014," but that "[n]o report was filed as of June 26, 2014, a period of 71 days, for a total of $3,550." It ordered Alliance to "register with the Secretary of State and file all required reports . . . within 14 days of the mailing of this decision." It further ordered Alliance "to remit [the monetary penalty] to the Secretary of State, Campaign Finance, within 30 days of the date of mailing of this decision."

¶ 32 The district court found that Alliance made a "straightforward argument[] that the last act in violation of the law, as contained in the order, was on June 26, 2014 . . .," and that because CIW filed its complaint on September 15, 2015, more than one year later, its enforcement action was barred by the statute of limitations. It

concluded that CIW failed to comply with the statute of limitations and dismissed the complaint.

## 2. Analysis

¶ 33    CIW contends its complaint sufficiently alleged the existence of a continuing violation so as to preclude dismissal under the statute of limitations.  Alliance responds that the limitations period began to run on the hearing date of June 26, 2014 — the last date the ALJ used to assess a penalty for the violations.  For the reasons stated below, we agree that the allegations of CIW's complaint, taken as true, suggest plausible grounds to support a claim for relief.

¶ 34    Based on our conclusion in Part II.A that failure to pay a fine does not constitute a violation of the FCPA or the Amendment, we reject Alliance's argument that the penalty range determines the date of violation.  Because an ALJ has broad discretion to impose sanctions for violations, the dates he or she selects for determining the appropriate sanction are merely instructive and not binding for the purposes of the statute of limitations.  *See Patterson*, 209 P.3d at 1217 (an ALJ has broad discretion under the Amendment to determine whether sanctions are appropriate for each violation); *see*

*also Colo. State Bd. of Med. Exam'rs v. Hoffner*, 832 P.2d 1062, 1067 (Colo. App. 1992) (medical board is not bound by the ALJ's imposition of sanctions). Thus, to the extent the district court concluded that the last date of the penalty range, June 26, 2014, corresponded with the date of violation in § 9 of the Amendment, this conclusion was erroneous and was contradicted by other language in the decision.

¶ 35     Here, the ALJ's footnote shows that Alliance had not registered or filed reports as of July 2014, and its order to Alliance to do so within fourteen days of the decision shows that Alliance had not done so as of August 8, 2014. Therefore, if the district court assumed a continuing violation until June 26, 2014, the violation continued until at least August 8, 2014, and the record does not show when or if the continuing violation ended. When viewed in a light most favorable to CIW, we conclude the complaint states a plausible claim of a continuing violation sufficient to withstand a Rule 12(b)(5) motion to dismiss based on the statute of limitations. We neither express nor imply an opinion regarding the correct determination of the date of violation. *See Wagner,* 166 P.3d at 307

("Whether a particular claim is time barred is a question of fact.") In deciding a motion under Rule 12(b)(5), neither the district court nor this court can make findings of fact, but rather must accept the allegations of fact in the light most favorable to the plaintiff. *Coors Brewing Co.,* 978 P.2d at 665. We have applied this principle in reviewing the order in this case, although we are aware of limitations on the continuing violation doctrine. *See Polk v. Hergert Land & Cattle Co.,* 5 P.3d 402, 405 (Colo. App. 2000) ("However, the continuing violation doctrine has been limited to discrimination cases." *citing Harmon v. Fred S. James & Co.,* 899 P.2d 258 (Colo. App. 1994)); *but see Crowell v. Indus. Claims Appeals Office,* 2012 COA 30, ¶ 13 (collecting cases finding a continuing violation and stating "the difference between a one-time violation and a continuing violation hinges on whether the violation is subject to being cured by subsequent action.").

¶ 36    Accordingly, we reverse the district court's order dismissing the complaint and remand the case for reinstatement of the complaint and further proceedings.

## III. Attorney Fees

¶ 37 CIW also contends the court erred when it awarded Alliance attorney fees. Because we remand this case for reinstatement of the complaint, we also reverse the award of attorney fees. However, because it may arise on remand, we address CIW's contention that its status as a pro se party precludes the court from awarding attorney fees against it.

¶ 38 First, we note that the plain language of § 9 of the Amendment entitles the prevailing party in a private enforcement action to reasonable attorney fees and costs. However, § 1-45-111.5(2), C.R.S. 2016, requires that § 13-17-102(5) and (6), C.R.S. 2016, be considered before awarding attorney fees. A district court may not assess attorney fees against a pro se party under § 13-17-102(6) unless it "finds that the party clearly knew or reasonably should have known that his action or defense, or any part thereof, was substantially frivolous, substantially groundless, or substantially vexatious." In considering an award of attorney fees against a pro se party, a district court must make findings under § 13-17-102(6). *Artes-Roy v. Lyman,* 833 P.2d 62, 63 (Colo. App. 1992). We note

24

that the court made no such findings here.  Thus, if this issue arises on remand, the district court should make the requisite findings before assessing attorney fees against CIW.

## IV.   Conclusion

¶ 39    The judgment is reversed, and the award of attorney fees is vacated.  The case is remanded for reinstatement of the complaint and for further proceedings consistent with this opinion.

JUDGE NIETO concurs.

JUDGE KAPELKE concurs in part and dissents in part.

JUDGE KAPELKE, concurring in part and dissenting in part.

¶ 40 I agree with the majority's analysis of the meaning of the term "violation" in article XXVIII, section 9(2)(a) of the Colorado Constitution and with its rejection of CIW's arguments that the one-year limitation period does not begin to run until the date of entry of the final judgment following appellate review. I further agree with the majority that the case should be remanded for the district court to make the necessary findings under § 13-17-102(6), C.R.S. 2016, with respect to the issue of attorney fees.

¶ 41 Nevertheless, I disagree with the majority's conclusion in Part II.B that the complaint states a "plausible claim for relief" based on the need for a determination whether there was a "continuing violation." In my view, the district court correctly granted Alliance's C.R.C.P. 12(b)(5) motion to dismiss the complaint as untimely.

¶ 42 The ALJ determined that Alliance violated § 1-45-108, C.R.S. 2016, of the FCPA (1) "by failing to register as a political committee" by the due date of March 17, 2014; and (2) by "failing to file required contribution and expenditure reports" by the respective due dates of "April 15, May 2, and June 5, 2014."

¶ 43 Those are, in my view, the controlling dates of the violations. The plain and unambiguous language of § 9(2)(a) provides: "Any private action brought under this section shall be brought within one year of the date of the violation in state district court." CIW's private enforcement action was filed on September 15, 2015, more than one year after all of the respective dates of the violations determined by the ALJ in the "Final Agency Decision." Section 9(2)(a) does not recognize any exception for "continuing violations."

¶ 44 Accordingly, I would affirm the district court's order dismissing the complaint pursuant to C.R.C.P. 12(b)(5).