Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us. Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
September 9, 2019

**2019 CO 76**

**No. 17SC284,** *Alliance for a Safe and Independent Woodmen Hills v. Campaign Integrity Watchdog, LLC*—**Campaign Finance**—**Statutes of Limitations**—**Attorney Fees.**

This case requires the supreme court to decide two questions regarding the meaning of article XXVIII, section 9(2)(a) of the Colorado Constitution. First, the court must construe the term "violation" as that term is used in section 9(2)(a) and decide whether the "violation" that triggers section 9(2)(a)'s one-year statute of limitations for private campaign finance enforcement actions can extend beyond the dates adjudicated and penalized in the decision being enforced. Second, the court must decide whether the attorney fees provision in section 9(2)(a) is self-executing or whether it must be read together with section 13-17-102(6), C.R.S. (2019), to limit attorney fee awards against a pro se party.

With regard to the first question, the court concludes that the term "violation," as used in section 9(2)(a), refers to the violation as adjudicated and penalized in the decision being enforced. Accordingly, the court further concludes that the division erred in perceiving a possible continuing violation under

section 9(2)(a). Therefore, the enforcement action in this case was barred by the one-year statute of limitations.

With regard to the second question, the court concludes that section 9(2)(a)'s language stating that "[t]he prevailing party in a private enforcement action shall be entitled to reasonable attorneys fees and costs" is self-executing and that section 13-17-102(6) cannot be construed to limit or nullify section 9(2)(a)'s unconditional award of attorney fees to the prevailing party. Accordingly, the court reverses the division's contrary determination and concludes that petitioners, as the prevailing parties in this case, are entitled to an award of the reasonable attorney fees that they incurred in the district and appellate courts in this case.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

---

## 2019 CO 76

---

### Supreme Court Case No. 17SC284
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 16CA267

---

### Petitioners:

Alliance for a Safe and Independent Woodmen Hills and Sarah Brittain Jack

v.

### Respondent:

Campaign Integrity Watchdog, LLC.

---

### Judgment Reversed
*en banc*
September 9, 2019

---

**Attorneys for Petitioners:**
Law Office of Robert S. Gardner
Robert S. Gardner
Laura A. Gardner
    *Colorado Springs, Colorado*

**Authorized Representative of Respondent:**
Matthew Arnold
    *Denver, Colorado*

**JUSTICE GABRIEL** delivered the Opinion of the Court.

¶1 In this case, we are asked to decide two questions regarding the meaning of article XXVIII, section 9(2)(a) of the Colorado Constitution. First, we must construe the term "violation" as that term is used in section 9(2)(a) and decide whether the "violation" that triggers section 9(2)(a)'s one-year statute of limitations for private campaign finance enforcement actions can extend beyond the dates adjudicated and penalized in the decision being enforced. Second, we must decide whether the attorney fees provision in section 9(2)(a) is self-executing or whether it must be read together with section 13-17-102(6), C.R.S. (2019), to limit attorney fee awards against a pro se party.[1]

¶2 With regard to the first question, we conclude that the term "violation," as used in section 9(2)(a), refers to the violation as adjudicated and penalized in the decision being enforced. Accordingly, we further conclude that the division erred

---

[1] Specifically, we granted certiorari to review the following issues:

1. Whether the court of appeals erred in holding that the "violation" triggering the statute of limitations for campaign-finance enforcement actions could extend beyond the dates adjudicated and penalized in the decision being enforced.

2. Whether the court of appeals erred in applying section 13-17-102(6), C.R.S. (2017), to the attorneys' fees provision of Article XXVIII of the Colorado Constitution.

2

in perceiving a possible continuing violation under section 9(2)(a). Therefore, the enforcement action in this case was barred by the one-year statute of limitations.

¶3 With regard to the second question, we conclude that section 9(2)(a)'s language stating that "[t]he prevailing party in a private enforcement action shall be entitled to reasonable attorneys fees and costs" is self-executing and that section 13-17-102(6) cannot be construed to limit or nullify section 9(2)(a)'s unconditional award of attorney fees to the prevailing party. Accordingly, we reverse the division's contrary determination and conclude that petitioners, Alliance for a Safe and Independent Woodmen Hills ("Alliance") and Sarah Brittain Jack, as the prevailing parties in this case, are entitled to an award of the reasonable attorney fees that they incurred in the district and appellate courts in this case.

## I. Facts and Procedural History

¶4 In May 2014, Woodmen Hills Metropolitan District ("Woodmen Hills") held an election to fill vacant positions on its board of directors, and Ron Pace was one of the candidates for such a position. Several months before the election, a group of Woodmen Hills residents formed Alliance, a non-profit organization headed by Jack, to educate Woodmen Hills residents about issues affecting their community.

¶5 Alliance subsequently undertook efforts advocating Pace's defeat in the upcoming election. Among other things, in the months leading to the election, Alliance mailed four different postcards to over 2,400 Woodmen Hills residents,

3

each making negative comments about Pace. Alliance also established a Facebook page that featured posts sharply critical of Pace and that expressly called for his defeat in the upcoming election.

¶6 Pursuant to article XXVIII, section 9(2)(a) of the Colorado Constitution, respondent Campaign Integrity Watchdog ("Watchdog"), Pace, and another Woodmen Hills resident subsequently filed campaign finance complaints with the Colorado Secretary of State ("Secretary"). As pertinent here, Watchdog alleged that Alliance violated the Colorado Fair Campaign Practices Act ("FCPA"), sections 1-45-101 to -118, C.R.S. (2019), and article XXVIII of the Colorado Constitution when it failed (1) to register as a political organization and political committee and (2) to report accurately all contributions received and all campaign spending or expenditures. The Secretary referred the complaints to the Office of Administrative Courts where they were consolidated.

¶7 Thereafter, an administrative law judge ("ALJ") held two days of hearings,[2] and on August 8, 2014, he issued a Final Agency Decision. In this decision, the ALJ found that Alliance was a political committee because it (1) expended over

---

[2] The ALJ held the initial hearing on June 26, 2014, but because of a power outage, the hearing could not be concluded in one day as scheduled but was completed on July 28, 2014.

4

$200 to oppose Pace's election by expressly advocating his defeat on its Facebook page and (2) received contributions in excess of $200 that were intended for and used to oppose Pace's election. The ALJ further found that as a political committee, Alliance was required to register with the Secretary and to make periodic reports of its contributions and expenditures but that it had not done so. Specifically, as to the failure to register, the ALJ ruled that "[b]ecause Alliance's first contribution in excess of $200 was received on March 16, 2014, it was obligated to register as of that date. Because March 16 was a Sunday, Alliance's registration was due the following workday, March 17th." And as to the reporting violations, the ALJ concluded that "[t]he reporting periods for special district elections are defined by Secretary of State Rule 17.4 as the 21st day before, the Friday before, and the 30th day after the date of a regular election," and "[b]ecause the election was held May 6, 2014, Alliance's reports were due April 15, May 2, and June 5, 2014."

¶8 The ALJ then proceeded to address the applicable sanctions to which Alliance was subject under article XXVIII, sections 9(2) and 10(2) and section 1-45-111.5(1.5), of the FCPA. In this regard, the ALJ imposed the following sanctions:

a) <u>Failure to register</u>: Registration was due March 17, 2014, but not filed as of the first day of hearing, June 26, 2014; a period of 101 days, for a total of $5,050.

5

b) <u>Failure to report</u>: Alliance received two contributions ($10,000 on March 16, 2014; $7,500 on March 17, 2014) by April 10, 2014, and therefore was required to report those contributions by April 15, 2014. No report was filed as of June 26th, a period of 71 days, for a total of $3,550.

Alliance received no more contributions and made no expenditures prior to the closing date for the report due May 2, 2014.

Alliance received one final contribution of $500 on May 12, 2014; and made the expenditure associated with its Facebook based express advocacy on May 29, 2014. These were reportable on the report due June 5, 2014. This report was not filed as of June 26, 2014, a period of 21 days, for a total of $1,050.

The total penalties therefore include $5,050 for failure to register as a political committee, and $4,600 for failure to file contributions and expenditures reports, for a total penalty of $9,650.

(Footnotes omitted.)

¶9 Alliance subsequently filed a motion to stay the ALJ's decision pending appeal, but the ALJ denied that motion. Several days later, Alliance filed a notice of appeal and a motion to stay with the Colorado Court of Appeals. A division of that court denied this motion to stay, and on October 8, 2014, Alliance registered with the Secretary as a political committee and reported its contributions and expenditures as the ALJ ordered it to do.

¶10 Just over one month later, Alliance moved to dismiss its appeal voluntarily, and the court of appeals granted that motion. Thereafter, the Secretary invoiced Alliance for the $9,650 in penalties that Alliance still owed, but the Secretary does not appear to have otherwise pursued enforcement of the ALJ's order.

6

¶11    On September 15, 2015, Watchdog filed a complaint in the El Paso County District Court seeking to enforce the portion of the ALJ's August 8, 2014 Final Agency Decision ordering Alliance to pay the $9,650 in penalties. Alliance moved to dismiss this complaint, alleging that section 9(2)(a) requires that private enforcement actions be brought within one year of the date of the violation and that Watchdog had filed its enforcement action more than one year after the latest date of any violation stated in the ALJ's decision.

¶12    Because both parties submitted documentary evidence supporting their positions on Alliance's motion, the district court appears to have treated Alliance's motion as a motion for summary judgment and granted that motion. In doing so, the court explained:

> The relevant Constitutional provision is clear and unambiguous, and it requires in pertinent part that "Any private action brought under this section shall be brought within one year of the date of the violation in state district court." Plaintiffs have not complied with this provision, and this Court accordingly has no jurisdiction to enforce the decision of the ALJ as a private action. [Watchdog's] position that the word "violation" refers to something besides its common meaning, such as the date of an alleged failure to pay the fine, is unavailing.

¶13    The court further explained, "The same constitutional provision which is at the heart of this lawsuit provides that '[t]he prevailing party in a private enforcement action shall be entitled to reasonable attorneys fees and costs.'" Accordingly, it concluded that Alliance was entitled to an award of fees and costs.

¶14    Watchdog then appealed, contending, among other things, that it had alleged a continuing violation and that therefore the district court had erred in determining that Watchdog's complaint was time-barred by the one-year statute of limitations.  Watchdog further argued that under Colorado statutory law, its status as a pro se party precluded the district court from awarding attorney fees against it.

¶15    In a divided, published opinion, a division of the court of appeals reversed the summary judgment for Alliance. *Campaign Integrity Watchdog, LLC v. All. for a Safe & Indep. Woodmen Hills*, 2017 COA 22, ¶ 1, __ P.3d __.  The division majority first reviewed the plain language of article XXVIII, section 9(2)(a) of the Colorado Constitution and "conclude[d] that the date of 'violation' means the date or dates the FCPA or [Constitutional] Amendment is violated, and that a private cause of action to enforce an ALJ's decision must be filed within one year of that date." *Id.* at ¶ 24.  The majority then proceeded to analyze whether the district court had properly identified the date of the violation.  *Id.* at ¶ 25.  The majority observed, "Because an ALJ has broad discretion to impose sanctions for violations, the dates he or she selects for determining the appropriate sanction are merely instructive and not binding for the purposes of the statute of limitations." *Id.* at ¶ 34.  The majority then determined that "to the extent the district court concluded that the last date of the penalty range, June 26, 2014, corresponded with the date of

violation in § 9 of the Amendment, this conclusion was erroneous and was contradicted by other language in the decision." *Id.* In support of this conclusion, the division explained:

> Here, the ALJ's footnote shows that Alliance had not registered or filed reports as of July 2014, and its order to Alliance to do so within fourteen days of the decision shows that Alliance had not done so as of August 8, 2014. Therefore, if the district court assumed a continuing violation until June 26, 2014, the violation continued until at least August 8, 2014, and the record does not show when or if the continuing violation ended. When viewed in a light most favorable to [Watchdog], we conclude the complaint states a plausible claim of a continuing violation sufficient to withstand a Rule 12(b)(5) motion to dismiss based on the statute of limitations.

*Id.* at ¶ 35.

¶16    The majority therefore reversed the district court's order, remanded the case for reinstatement of Watchdog's complaint and further proceedings, and reversed the award of attorney fees to Alliance and Jack. *Id.* at ¶¶ 36–37. Because the issue could arise on remand, however, the majority proceeded to address Watchdog's contention that its status as a pro se party precluded the district court from awarding attorney fees against it. In this regard, the majority initially noted that the plain language of section 9 entitles the prevailing party in a private enforcement action to reasonable attorney fees and costs. *Id.* at ¶ 38. The majority observed, however, that section 1-45-111.5(2) requires that a court consider sections 13-17-102(5) and (6) before awarding fees. *Id.* The majority then noted that under section 13-17-102(6), a district court may not assess fees against a pro

9

se party unless the court finds that the party clearly knew or reasonably should have known that its action or defense, or any part thereof, was substantially frivolous, groundless, or vexatious. *Id.* The majority thus stated that if the issue were to arise again on remand, then the district court should make the requisite statutory findings before assessing fees against Watchdog. *Id.*

¶17 Judge Kapelke concurred in part and dissented in part. He agreed with the majority's analysis of the meaning of the term "violation" in section 9(2)(a). *Id.* at ¶ 40 (Kapelke, J., concurring in part and dissenting in part). He disagreed, however, with the majority's conclusion that Watchdog's complaint stated "a 'plausible claim for relief' based on the need for a determination whether there was a 'continuing violation.'" *Id.* at ¶ 41. In his view, the controlling "violation" dates were, as the ALJ found, (1) the March 17, 2014 due date for Alliance to register as a political committee and (2) the April 15, May 2, and June 5, 2014 dates by which Alliance was required to file its contribution and expenditure reports. *Id.* at ¶ 42. Because Watchdog's private enforcement action was filed on September 15, 2015, more than one year after all of the respective dates of violations determined by the ALJ, and because "[s]ection 9(2)(a) does not recognize any exception for 'continuing violations,'" Judge Kapelke would have affirmed the district court's order dismissing Watchdog's complaint. *Id.* at ¶¶ 43–44.

10

¶18    Alliance then petitioned this court for certiorari review, and we granted that petition.

## II.  Analysis

¶19    We begin with the applicable standard of review and principles of statutory interpretation.   Next, we analyze the plain language of article XXVIII, section 9(2)(a) of the Colorado Constitution and conclude that when "violation" is read in context, it plainly means the violation as adjudicated and penalized in the decision being enforced.  Thus, because Watchdog filed its complaint to enforce the ALJ's decision more than one year after any of the dates of the violations found and penalized in that decision, it was barred by the one-year statute of limitations. Finally, we turn to the attorney fees provision in section 9(2)(a) and conclude that that provision is self-executing and is not modified by section 13-17-102(6). Accordingly, we reverse the division majority's contrary ruling, and pursuant to section 9(2)(a), we conclude that Alliance and Jack, as the prevailing parties in this case, are entitled to an award of the reasonable attorney fees that they incurred in the district court, on appeal in the court of appeals, and in this court.

### A.  Standard of Review and Principles of Construction

¶20    Constitutional interpretation and statutory construction present questions of law that we review de novo.  *Gessler v. Colo. Common Cause*, 2014 CO 44, ¶ 7, 327 P.3d 232, 235.

11

¶21 In construing statutes and citizen initiatives, we seek to give effect to the General Assembly's and the electorate's intent, respectively. *See People v. Lente*, 2017 CO 74, ¶ 16, 406 P.3d 829, 832 (citizen initiative); *Teague v. People*, 2017 CO 66, ¶ 8, 395 P.3d 782, 784 (statute). We read words and phrases in context, according them their plain and ordinary meanings. *Lente*, ¶ 16, 406 P.3d at 832; *Teague*, ¶ 8, 395 P.3d at 784. If the language is clear, we apply it as written and need not resort to other tools of statutory interpretation. *Lente*, ¶ 16, 406 P.3d at 832; *Teague*, ¶ 8, 395 P.3d at 784.

## B. "Violation" Under Section 9(2)(a)

¶22 Article XXVIII of the Colorado Constitution concerns campaign and political finance and, among other things, establishes campaign contribution and expenditure reporting requirements and provides for private enforcement of certain of its mandates.

¶23 As pertinent here, section 9(2)(a) of article XXVIII addresses the process and requirements for private enforcement. That section provides:

> Any person who believes that a *violation* of section 3, section 4, section 5, section 6, section 7, or section 9(1)(e), of this article, or of sections 1-45-108, 1-45-114, 1-45-115, or 1-45-117 C.R.S., or any successor sections, has occurred may file a written complaint with the secretary of state no later than one hundred eighty days after the date of *the alleged violation*. The secretary of state shall refer the complaint to an administrative law judge within three days of the filing of the complaint. The administrative law judge shall hold a hearing within fifteen days of the referral of the complaint, and shall render *a decision* within fifteen days of the hearing. The defendant shall be granted an

12

extension of up to thirty days upon defendant's motion, or longer upon a showing of good cause. If the administrative law judge determines that *such violation* has occurred, *such decision* shall include any appropriate order, sanction, or relief authorized by this article. The decision of the administrative law judge shall be final and subject to review by the court of appeals, pursuant to section 24-4-106(11), C.R.S., or any successor section. The secretary of state and the administrative law judge are not necessary parties to the review. The decision may be enforced by the secretary of state, or, if the secretary of state does not file an enforcement action within thirty days of the decision, in a private cause of action by the person filing the complaint. Any private action brought under this section shall be brought within one year of the date of *the violation* in state district court. The prevailing party in a private enforcement action shall be entitled to reasonable attorneys fees and costs.

§ 9(2)(a) (emphases added).[3]

¶24 Both parties, as well as the division below, agree that section 9(2)(a) requires private enforcement actions to be brought within one year of the date of "the violation." They disagree, however, as to the meaning of "the violation" for

---

[3] In *Holland v. Williams*, No. 16-cv-00138-RM-MLC, 2018 WL 2938320, at *8–9, 11–13 (D. Colo. June 12, 2018), the United States District Court (1) granted the plaintiff's motion for summary judgment and found the private enforcement provision of section 9(2)(a) to be facially unconstitutional and (2) declined to enter judgment pending further proceedings on the plaintiff's motion for a permanent injunction. Apparently, the defendant did not appeal that decision, but the case ended before the court ruled on the permanent injunction motion. This decision is not binding on this court, *see Ahart v. Colo. Dep't of Corrs.*, 964 P.2d 517, 522 (Colo. 1998), and we need not address the constitutionality of section 9(2)(a)'s enforcement provision (an issue that neither party briefed here), because, assuming the provision is constitutional, Watchdog's enforcement action is time-barred.

purposes of determining when the one-year limitation period accrues. Alliance argues that under the plain meaning of section 9(2)(a), the one-year limitation period begins to run as of the dates of violation found and penalized in the ALJ's decision. Watchdog, in contrast, argues that the plain meaning of "violation" means the "last act" of breaking or dishonoring the FCPA, which can continue post judgment. We agree with Alliance.

¶25 Under section 9(2)(a), "[a]ny person who believes that *a violation*" has occurred can file a complaint with the Secretary, who then refers the case to an ALJ, who must hold a hearing within fifteen days of the referral and render a decision within fifteen days of the hearing. (Emphasis added.) "If the administrative law judge determines that *such violation* has occurred, *such decision* shall include any appropriate order, sanction, or relief authorized by this article." *Id.* (emphases added).

¶26 Thereafter, the Secretary may enforce the decision, but if the Secretary does not file an enforcement action within thirty days of the decision, then the person filing the complaint may file a private enforcement action. *Id.* This action, however, must be brought within one year of "the date of *the violation*." *Id.* (emphasis added). In our view, "the violation" referred to in the provision establishing a one-year statute of limitations refers to the violation found and penalized in the ALJ's decision. That violation, in turn, refers back to the violation

14

alleged in the campaign finance complaint. Such a reading is not only consistent with section 9(2)(a)'s plain language, but also it is consistent with the notion of enforcing the ALJ's order. Section 9(2)(a) allows a party to seek to enforce only an ALJ's decision. It does not authorize a party to enforce a violation that the ALJ did not find or that has not occurred yet.

¶27 In his decision, the ALJ found that Alliance was required to register as a political committee by March 17, 2014, and that Alliance's applicable contribution and expenditure reports were due on April 15, May 2, and June 5, 2014. The ALJ subsequently calculated penalties for each violation based on the numbers of days that had elapsed between the due dates of the filings and the first date of the administrative hearing, which occurred on June 26, 2014. Accordingly, the latest date on which the ALJ found a specific violation was June 5, 2014, and the latest date for which the ALJ imposed a penalty was June 26, 2014. As a result, the latest date on which the ALJ could be said to have found a violation was June 26, 2014, and therefore, Watchdog's private cause of action accrued no later than that date, giving Watchdog until, at the latest, June 26, 2015, to file any private enforcement action.

¶28 Because Watchdog did not file its complaint until September 15, 2015, however, we conclude that its enforcement action was untimely.

¶29     We are not persuaded otherwise by Watchdog's contention that it had alleged a continuing violation and therefore its cause of action did not accrue until October 8, 2014, the date on which Alliance registered and filed the required reports. Although it is not clear to us that Watchdog, in fact, alleged a continuing violation in its complaint, assuming without deciding that it did, the ALJ's decision did not find a continuing violation but rather found and penalized violations through and including June 26, 2014, and as noted above, this is the latest date on which Watchdog's cause of action can be said to have accrued.

¶30     Nor are we persuaded by Watchdog's contention that it may be impossible for parties to file a timely enforcement action because the statute of limitations could run prior to the entry of judgment or the final appellate mandate regarding the administrative proceeding. In support of this contention, Watchdog asserts that a private party may only file an enforcement action if the Secretary chooses not to file one. Watchdog further notes that the Secretary cannot file an enforcement action until the appellate mandate arising from the administrative proceeding issues because the district court would lack jurisdiction over such an action while an appeal concerning the administrative proceeding is pending. Accordingly, Watchdog contends that allowing the statute of limitations to begin to run from the date of the violation found and penalized in the ALJ's decision would create an absurd result because the one-year statute of limitations could

16

expire while the appeal from the administrative proceeding is pending, thus eliminating any opportunity to file an enforcement action. For three reasons, we disagree.

¶31 First, section 9(2)(a) does not state that the one-year statute of limitations begins to run from the date of the appellate mandate. It says, "Any private action brought under this section shall be brought within one year of the date of *the violation* in state district court." § 9(2)(a) (emphasis added).

¶32 Second, Watchdog has provided no applicable authority, and we have seen none, to support its contention that a district court would lack jurisdiction over an enforcement action while an appeal concerning the administrative proceeding is pending. A district court generally loses jurisdiction when the case *before that court* is on appeal. *Schnier v. Dist. Court*, 696 P.2d 264, 267 (Colo. 1985) ("Generally, the filing of a notice of appeal divests the trial court of jurisdiction, although this rule is subject to a number of exceptions."). Here, in contrast, the enforcement action would be filed as a *separate action*, and a court does not lack jurisdiction due to the fact that a related case is on appeal. *See Globe Indem. Co. v. Wrenn Ins. Agency of Mo.*, 816 F. Supp. 1379, 1381 (W.D. Mo. 1993) ("It is well settled that the fact that a case is proceeding in one court does not necessarily defeat jurisdiction of a parallel case in another court.").

¶33 Third, if need be, a party filing an enforcement action can protect its rights by timely filing the enforcement action and then asking the court to stay that action pending the disposition of the appeal concerning the administrative proceeding. Such a procedure would be consistent with the constitution's plain language, and it would avoid the absurd result that Watchdog posits.

¶34 For these reasons, we conclude that Watchdog's enforcement action here is time-barred.

## C. Attorney Fees Under Section 9(2)(a)

¶35 Alliance argues that if it prevails on appeal, then it is entitled to attorney fees under section 9(2)(a) and that the division erred in concluding that section 13-17-102(6) effectively modifies section 9(2)(a). We agree with both points.

¶36 As noted above, section 9(2)(a) provides, in pertinent part, "The prevailing party in a private enforcement action shall be entitled to reasonable attorneys fees and costs."

¶37 Section 13-17-102(6) provides:

> No party who is appearing without an attorney shall be assessed attorney fees unless the court finds that the party clearly knew or reasonably should have known that his action or defense, or any part thereof, was substantially frivolous, substantially groundless, or substantially vexatious; except that this subsection (6) shall not apply to situations in which an attorney licensed to practice law in this state is appearing without an attorney, in which case, he shall be held to the standards established for attorneys elsewhere in this article.

¶38 The question before us is whether section 13-17-102(6) can be construed as imposing a legislative limitation on section 9(2)(a).

¶39 In *Yenter v. Baker*, 248 P.2d 311, 314 (Colo. 1952), we made clear that a facially self-executing provision of our constitution is not subject to legislative restriction or curtailment:

> A constitutional provision is a higher form of statutory law which the people may provide shall be self-executing; the object being to put it beyond the power of the Legislature to render it nugatory by refusing to pass laws to carry it into effect.

> An equally important object of self-execution is to put it beyond the power of the legislature to render it nugatory by passing restrictive laws.

> Only such legislation is permissible as is in furtherance of the purpose, or as will facilitate the enforcement, of such provision, and legislation which will impair, limit or destroy rights granted by the provision is not permissible.

> If a constitutional provision is self-enforcing . . . then any legislation respecting the provision must facilitate enforcement and not curtail or limit any right created and conferred by the provision. If a legislative act undertakes to limit the provisions of the Constitution, then in a contest, the Constitution survives and the act falls.

> The power to impair would be the power to destroy.

(Alteration in original) (internal citations and quotation marks omitted.)

¶40 The question thus becomes whether section 9(2)(a) is self-executing. A constitutional provision is self-executing when it appears to take immediate effect and no further action by the legislature is required to implement the right given.

*Developmental Pathways v. Ritter*, 178 P.3d 524, 531 (Colo. 2008). "Constitutional provisions are presumed to be self-executing," and "[t]his presumption is even more appropriate when considering initiated amendments." *Davidson v. Sandstrom*, 83 P.3d 648, 658 (Colo. 2004).

¶41 Because section 9(2)(a) appears to take immediate effect and no further action by the legislature is required to implement it, we conclude that it is self-executing. Therefore, section 13-17-102(6) cannot be read as imposing a limitation on section 9(2)(a)'s applicability.

¶42 In reaching this conclusion, we are not persuaded by Watchdog's argument that under section 1-45-111.5(2) of the FCPA, section 9(2)(a) requires an analysis of whether attorney fees can be awarded against a pro se party. Section 1-45-111.5(2) provides, in pertinent part, "[N]o attorney fees may be awarded *under this subsection (2)* unless the court or hearing officer, as applicable, has first considered and issued written findings regarding the provisions of section 13-17-102(5) and (6)." (Emphasis added.) Here, however, the district court did not award attorney fees under section 1-45-111.5(2). Rather, the court awarded fees directly under article XXVIII, section 9(2)(a) of the Colorado Constitution. Moreover, for the same reasons that section 13-17-102(6) cannot be construed to limit section 9(2)(a), section 1-45-111.5(2) cannot be construed as imposing a legislative limitation on that self-executing constitutional provision.

20

¶43 Accordingly, under the plain language of section 9(2)(a), Alliance and Jack, as the prevailing parties here, are entitled to an award of their reasonable attorney fees.

## III. Conclusion

¶44 For the foregoing reasons, we conclude that for purposes of the one-year statute of limitations set forth in article XXVIII, section 9(2)(a) of the Colorado Constitution, the "violation" that starts the time for filing a private enforcement action is the violation that the ALJ found and penalized in the decision to be enforced. Here, because that violation occurred, at the latest, on June 26, 2014, Watchdog's enforcement action, which was not filed until September 15, 2015, was time-barred.

¶45 We further conclude that the fee-shifting provision in section 9(2)(a) is self-executing and therefore cannot be construed to be limited by section 13-17-102(6). Accordingly, as the prevailing parties here, Alliance and Jack are entitled to an award of the reasonable attorney fees that they incurred in the district and appellate courts in this case, and we remand the case with instructions that the matter be returned to the district court for a determination of the reasonable fees to be awarded.

¶46 The judgment is therefore reversed, and this case is remanded for further proceedings consistent with this opinion.

21