Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
November 12, 2019

**2019 CO 93**

**No. 18SC330, <u>Colorado Medical Board v. McLaughlin</u>—Administrative Law—
Colorado Medical Board—Disciplinary Procedures—Subpoenas.**

In this case, the supreme court is asked to determine whether an
investigative subpoena issued by the Colorado Medical Board (the "Board") can
have a lawfully authorized purpose if the investigation was prompted by a
complaint made by the Colorado Department of Public Health and Environment
(the "CDPHE") pursuant to a policy that violated the Open Meetings Law (the
"OML") or the State Administrative Procedure Act (the "APA").

In *Doe v. Colorado Department of Public Health & Environment*, 2019 CO 92,
__ P.3d __, which the supreme court also decides today, the court concludes that
(1) the CDPHE, as a state agency, is not a "state public body" under the OML and
therefore could not violate that statute and (2) the CDPHE did not violate the APA
in developing the policy at issue or in referring doctors to the Board under that
policy.  For this reason alone, the court necessarily rejects the respondent's

argument that the investigative subpoena lacked a lawfully authorized purpose because it was based on a policy that violated the OML and the APA.

Even if the CDPHE's adoption of the policy at issue and its reliance on it were invalid, however, the supreme court concludes that the Board's investigative subpoena had a lawfully authorized purpose because it was issued pursuant to the Board's statutory authority to investigate allegations of unprofessional conduct and was properly tailored to that purpose.

Accordingly, the court reverses the judgment of the division below and remands this case for further proceedings consistent with this opinion.

**The Supreme Court of the State of Colorado**
2 East 14th Avenue • Denver, Colorado 80203

**2019 CO 93**

**Supreme Court Case No. 18SC330**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 17CA73

**Petitioner:**

Colorado Medical Board,

v.

**Respondent:**

Scott Storm McLaughlin, M.D.

**Judgment Reversed**
*en banc*
November 12, 2019

**Attorneys for Petitioner:**
Philip J. Weiser, Attorney General
Ashley E. Moller, Senior Assistant Attorney General
Sierra Ward, Senior Assistant Attorney General
     *Denver, Colorado*

Maxfield Gunning, LLP
Eric H. Maxfield
     *Boulder, Colorado*

**Attorneys for Respondent:**
Hershey Decker Drake
Carmen Nicole Decker
Kaylyn Peister
     *Lone Tree, Colorado*

**JUSTICE GABRIEL** delivered the Opinion of the Court.

¶1 In this case, we are asked to determine whether an investigative subpoena issued by the Colorado Medical Board (the "Board") can have a lawfully authorized purpose if the investigation was prompted by a complaint made by the Colorado Department of Public Health and Environment (the "CDPHE") pursuant to a policy that violated the Open Meetings Law (the "OML") or the State Administrative Procedure Act (the "APA").[1]

¶2 In *Doe v. Colorado Department of Public Health & Environment*, 2019 CO 92, __ P.3d __, which we also decide today, we conclude that (1) the CDPHE, as a state agency, is not a "state public body" under the OML and therefore could not violate that statute and (2) the CDPHE did not violate the APA in developing the policy at issue or in referring doctors to the Board under that policy. For this reason alone, we necessarily reject Scott McLaughlin's argument that the investigative subpoena lacked a lawfully authorized purpose because it was based on a policy that violated the OML and the APA.

---

[1] We granted certiorari to review the following issue:

> Whether an agency investigative subpoena can have a lawfully authorized purpose even if the investigation was prompted by a complaint from a different agency under a referral policy that violated the Open Meetings Law or Administrative Procedure Act.

¶3 Even if the CDPHE's adoption of the policy at issue and its reliance on it were invalid, however, we still would conclude that the Board's investigative subpoena had a lawfully authorized purpose because it was issued pursuant to the Board's statutory authority to investigate allegations of unprofessional conduct and was properly tailored to that purpose.

¶4 Accordingly, we reverse the judgment of the division below and remand this case for further proceedings consistent with this opinion.

## I. Facts and Procedural History

¶5 McLaughlin is a physician licensed to practice medicine in Colorado. As part of his practice, he evaluates patients to see if they have a qualifying condition that would benefit from the use of medical marijuana.

¶6 Information related to medical marijuana in Colorado is maintained by the CDPHE in a confidential registry that includes the names of all patients who have applied for and are entitled to receive a marijuana registry identification card, as well as the names and contact information for the patients' physicians and, if applicable, their primary caregivers. Colo. Const. art. XVIII, § 14(3)(b); Dep't of Pub. Health and Env't, 5 Colo. Code Regs. 1006-2:1(A) (2019). If the CDPHE has reasonable cause to believe that a physician has violated either section 14 of article XVIII of the state constitution, section 25-1.5-106(5)(a)–(c), C.R.S. (2019), or the rules promulgated by the CDPHE pursuant to section 25-1.5-106(3), all of which

4

govern physicians who certify medical conditions for applicants to the medical marijuana program, then the CDPHE may refer the matter to the Board for an investigation and determination. § 25-1.5-106(6); 5 Colo. Code Regs. 1006-2:8(B) (2019).

¶7 In May 2014, the CDPHE implemented Medical Marijuana Policy No. 2014-01 ("the Referral Policy"). The Referral Policy provides that the CDPHE will use its statistical reviews of physician medical marijuana recommendations to determine whether reasonable cause exists to refer a physician to the Board for investigation. Factors to be considered include (1) whether a physician has a high caseload, as determined by the number of patients for whom medical marijuana is recommended (a high caseload is calculated as 3,521 or more patient recommendations in one year); (2) whether a physician recommended increased plant counts for more than thirty percent of his or her caseload; and (3) whether more than one-third of the physician's patient caseload is under the age of thirty. The CDPHE referred McLaughlin to the Board for investigation on the ground that he allegedly exceeded one of these thresholds.

¶8 Thereafter, the Board served a subpoena duces tecum on McLaughlin, ordering him to produce his complete medical records for certain identified patients whom he examined on specified dates between August 2014 and January 2015. The Board informed McLaughlin that this subpoena was part of an

investigation into his medical marijuana recommendations for a possible violation of the Colorado Medical Practice Act, §§ 12-240-101 to -145, C.R.S. (2019).[2] The Board further advised McLaughlin that its investigation was based on a complaint that the Board had received about him from the CDPHE pursuant to the Referral Policy.

¶9 McLaughlin refused to comply with the subpoena, arguing that the Referral Policy was adopted in violation of the Colorado Constitution, the APA, and the OML. The Board subsequently reissued the subpoena, but McLaughlin again refused to comply, and the Board sought an ex parte order in the Denver District Court to enforce the subpoena.

¶10 McLaughlin then moved to quash the subpoena, arguing that (1) it stemmed from the CDPHE's violation of the OML, (2) action taken in violation of the OML is null and void, and (3) the subpoena therefore was not issued for a lawful purpose.

¶11 The district court ultimately denied McLaughlin's motion to quash. Although by the time of the court's ruling the court had determined that the

---

[2] Effective October 1, 2019, the Colorado Medical Practice Act was relocated from article 36 of title 12 to article 240 of the same title. For convenience, we will cite the Act in accordance with its current location in the Colorado Revised Statutes.

Referral Policy violated the OML, the court nevertheless concluded that the Board's investigation and subpoena were for a lawfully authorized purpose, namely, the Board's duty to investigate licensed physicians who may fail to meet generally accepted standards of practice.

¶12 McLaughlin appealed, and in a split, published opinion, a division of the court of appeals reversed the district court's order enforcing the subpoena. *Colo. Med. Bd. v. McLaughlin*, 2018 COA 41, 425 P.3d 1187. In so ruling, the majority first concluded that the Referral Policy was invalid under both the OML and the APA because the CDPHE and Board "officials" had drafted that Policy without public meetings, public notice, or compliance with applicable notice and comment rulemaking procedures. *Id.* at ¶¶ 23–26, 425 P.3d at 1192–93.

¶13 The majority then addressed the Board's authority to investigate complaints. The division opined that (1) although the Board may have had the authority to initiate a complaint against McLaughlin if it suspected that he had engaged in "unprofessional conduct," the Board had not pointed to any provision in the statutory definition of "unprofessional conduct" that McLaughlin was suspected of violating; (2) although the Board can investigate complaints regarding validly adopted agency rules, the Referral Policy was not validly adopted; and (3) although the CDPHE could refer a physician to the Board if it had reasonable cause to believe the physician had violated rules promulgated

7

pursuant to the CDPHE's rulemaking authority, the Referral Policy was not such a rule. *Id.* at ¶¶ 32–33, 425 P.3d at 1194. The majority thus concluded, "[B]ecause the [Referral Policy] was void, the referral was void, and it is thus as if there were no complaint at all to prompt the Board's investigation." *Id.* at ¶ 33, 425 P.3d at 1194.

¶14 Finally, the majority rejected the Board's argument that even if the Referral Policy and the referral were void, the investigation and subpoena were still valid because the Board can initiate an investigation even without suspicion of misconduct. *Id.* at ¶¶ 35–37, 425 P.3d at 1194–95. In so ruling, the majority specifically rejected the Board's reliance on *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186 (1946). *McLaughlin*, ¶¶ 35–37, 425 P.3d at 1194–95. In the majority's view, the subpoena in *Walling* was "lawful because the agency acted in 'exact compliance' with the statute authorizing its investigations." *Id.* at ¶ 36, 425 P.3d at 1195 (quoting *Walling*, 327 U.S. at 201). This distinguished *Walling* from the circumstances in the present case, where, according to the majority, the Board had issued a subpoena that had no lawful purpose (because an alleged violation of an invalid policy could not provide a lawful basis for suspecting misconduct). *Id.* at ¶¶ 34, 37, 425 P.3d at 1194, 95.

¶15 Judge Booras dissented, noting that under prevailing authority, courts determine the validity of a subpoena by asking whether it was issued within the

scope of the agency's authority. *Id.* at ¶¶ 45–46, 425 P.3d at 1196 (Booras, J., dissenting) (citing *Equal Emp't Opportunity Comm'n v. Univ. of N.M.*, 504 F.2d 1296, 1302 (10th Cir. 1974)). She then opined that the subpoena at issue was within the scope of the Board's authority for four reasons.

¶16 First, she noted that the Board's authority to investigate matters related to the practice of medicine does not depend on receiving a complaint. *McLaughlin*, ¶ 47, 425 P.3d at 1196. Indeed, in her view, an administrative agency can investigate solely based on its suspicion that the law was being violated. *Id.*

¶17 Second, she distinguished *Walling* on the ground that there, the Supreme Court was concerned not with the subpoena's purpose, but with its breadth and relevance to the subject matter of the investigation. *Id.* at ¶ 48, 425 P.3d at 1196.

¶18 Third, she observed that by statute, the Board has authority to (1) "investigate 'matters relating to the exercise and performance of the powers and duties vested in the board,'" including allegations of unprofessional conduct; and (2) start an investigation on its own motion or based on a citizen complaint. *Id.* at ¶ 49, 425 P.3d at 1197 (quoting § 12-240-106(1)(b)). Because the Board's authority to investigate was not dependent on receiving a complaint, its investigation was not "tainted" by any violation of the OML by a different agency, even if that agency had forwarded the complaint that formed the basis of the Board's investigation. *Id.*

9

¶19    Finally, Judge Booras noted that although courts may inquire into the underlying reasons for a summons when a party alleges an abuse of process (e.g., harassment or bad faith), reliance on a referral policy that the CDPHE promulgated in violation of the OML did not rise to that level. *Id.*

¶20    The Board petitioned this court to review the division's judgment, and we granted that petition.

## II. Analysis

¶21    We begin by reciting the applicable standards of review. We then proceed to apply our holding in *Doe* to this case, and we conclude that because neither the CDPHE's adoption of the Referral Policy nor its referral of McLaughlin to the Board violated the OML or the APA, the premise of McLaughlin's argument that the subpoena at issue lacked a lawful purpose is unfounded and therefore his challenge to the subpoena fails. Finally, we consider whether the subpoena was issued for a lawfully authorized purpose even if the Referral Policy could be said to have been adopted in violation of the OML and the APA, and we conclude that it was.

## A. Standard of Review

¶22    Statutory interpretation presents a question of law that we review de novo. *All. for a Safe & Indep. Woodmen Hills v. Campaign Integrity Watchdog, LLC*, 2019 CO 76, ¶ 20, __ P.3d __. In construing statutes, we seek to give effect to the General

Assembly's intent. *Id.* at ¶ 21. We read words and phrases in context, according them their plain and ordinary meanings. *Id.* If the language is clear, we apply it as written and need not resort to other tools of statutory interpretation. *Id.*

¶23 The question of whether an administrative subpoena had a lawfully authorized purpose generally presents a mixed question of law and fact because it involves the application of a legal standard to a particular set of evidentiary facts. *See Mt. Emmons Mining Co. v. Town of Crested Butte*, 690 P.2d 231, 239 (Colo. 1984). Here, however, the parties do not dispute the underlying facts or the purpose for the subpoena. They dispute only the legal determination of whether that purpose was "lawfully authorized." We therefore review the division's legal conclusions on this issue de novo. *State Farm Mut. Auto. Ins. Co. v. Johnson*, 2017 CO 68, ¶ 12, 396 P.3d 651, 654.

## B. *Doe v. CDPHE*

¶24 In *Doe*, ¶¶ 14–46, which we also decide today, we affirmed the division's conclusions that (1) the CDPHE could not violate the OML when it adopted the Referral Policy because the CDPHE is not a "state public body" as defined in the OML and therefore is not subject to the OML's requirements; (2) the Referral Policy is an interpretive rule and thus the CDPHE was not required to follow APA rulemaking requirements when it drafted the policy; and (3) the CDPHE's referral

11

of the physicians in that case to the Board did not constitute final agency action and therefore was not subject to the APA.

¶25 In light of these conclusions, McLaughlin's assertion that the subpoena lacked a lawfully authorized purpose because it was issued as a result of a referral made under a policy that violated the OML and the APA is based on a faulty premise and therefore cannot prevail.

## C. "Lawfully Authorized Purpose"

¶26 Even if the Referral Policy could be said to have been adopted in violation of the OML and the APA, however, we would reach the same result.

¶27 Seizure of administrative records through an administrative agency subpoena is valid if (1) the investigation pursuant to which the subpoena was issued is for a lawfully authorized purpose; (2) the information sought is relevant to the inquiry; and (3) the subpoena is sufficiently specific to obtain documents that are adequate but not excessive for the inquiry. *Charnes v. DiGiacomo*, 612 P.2d 1117, 1122 (Colo. 1980). If a party challenges an administrative subpoena, then the issuing agency bears the burden of demonstrating the propriety of the subpoena. *Colo. State Bd. of Accountancy v. Arthur Andersen LLP*, 116 P.3d 1245, 1248 (Colo. App. 2005). Here, McLaughlin contests only the first requirement, namely, whether the subpoena had a lawfully authorized purpose.

¶28 Although we have not considered the meaning of the phrase "lawfully authorized purpose" in the context of a subpoena issued by the Board, in *Charnes*, 612 P.2d at 1123, we considered the meaning of that phrase in the context of a taxpayer's challenge to a Department of Revenue subpoena for certain financial records that was issued to the taxpayer's bank. We concluded that the investigation pursuant to which the subpoena was issued was for a lawfully authorized purpose because the Department had a statutory duty to enforce Colorado's tax laws and the information sought related to the accuracy of the taxpayer's return and the amount of his income, both of which were relevant to the Department's enforcement efforts. *Id.* at 1122.

¶29 In our view, the same reasoning applies here.

¶30 The legislative declaration of the Colorado Medical Practice Act

> declares it to be in the interests of public health, safety, and welfare to enact laws regulating and controlling the practice of the healing arts to the end that the people shall be properly protected against unauthorized, unqualified, and improper practice of the healing arts in this state, and this article 240 shall be construed in conformity with this declaration of purpose.

§ 12-240-102.

¶31 To carry out these purposes, the legislature created the Board and gave it the authority to "[m]ake investigations, hold hearings, and take evidence in accordance with section 12-20-403 in all matters relating to the exercise and performance of the powers and duties vested in the board."

13

§§ 12-240-105, -106(1)(b). Section 12-20-403(2), C.R.S. (2019), in turn, authorizes regulators like the Board to "issue subpoenas compelling the attendance of witnesses and the production of all relevant records, papers, books, documentary evidence, and materials in any hearing, investigation, accusation, or other matter before the regulator" and to enforce those subpoenas in the district court if necessary.

¶32 Finally, section 12-240-125(4)(a) provides, "Written complaints relating to the conduct of a licensee licensed or authorized to practice medicine in this state may be made by any person or may be initiated by an inquiry panel of the board on its own." This section further provides for notice to the subject licensee, an opportunity for the licensee to respond to the allegations, and further proceedings before an inquiry panel. *Id.*

¶33 Here, the Board had a statutory duty to investigate, among other things, complaints relating to the conduct of a licensee licensed or authorized to practice medicine in Colorado. Moreover, the subpoena at issue sought information that was directly related to the exercise of that statutory duty, namely, patient records that would enable the Board to determine whether McLaughlin's medical marijuana recommendations complied with applicable law. Thus, under *Charnes*, 612 P.2d at 1122–23, the subpoena was issued for a lawfully authorized purpose.

14

¶34 Our conclusion in this regard finds further support in the text of section 12-240-125(4)(a)(I) of the Colorado Medical Practice Act, which, as noted above, authorizes the Board to act on a written complaint from "any person" or on a complaint initiated by the Board itself. The Act nowhere conditions the Board's investigatory or disciplinary authority or its authority to issue subpoenas on the legal validity of the process that resulted in the underlying complaint. Nor does the Act require the Board to investigate the legal validity of that process. Indeed, such a requirement would be contrary to the Act's purposes.

¶35 As noted above, the legislature enacted the Colorado Medical Practice Act to ensure that the people shall be properly protected against the unauthorized, unqualified, and improper practice of the healing arts in Colorado. § 12-240-102. Toward that end, the legislature created the Board and authorized it, among other things, to investigate complaints relating to the conduct of those licensed or authorized to practice medicine in Colorado. §§ 12-240-105, -106(1)(b), -125(4)(a). Were we to adopt the position that McLaughlin espouses in this case, the focus of the Board's efforts would shift from carrying out its statutory duties of investigating and remedying substantive allegations of improper medical practice to investigating the referral source in every case before pursuing its statutory duties. We perceive no basis for imposing such a requirement on the Board. To the contrary, doing so could potentially jeopardize public health and safety (e.g.,

15

by precluding or forestalling legitimate investigations into physician misconduct), thereby undermining the very purposes of the Act.

¶36 For all of these reasons, we conclude that the subpoena had a lawfully authorized purpose, regardless of whether the Referral Policy was adopted in violation of either the OML or the APA.

¶37 We are not persuaded otherwise by *Board of Medical Examiners v. Duhon*, 895 P.2d 143, 147 (Colo. 1995), on which the majority below relied. That case principally involved a question of when in the course of an investigation the Board is authorized to issue an administrative subpoena. *Id.* at 146–48. This case does not present such a timing issue. Moreover, *Duhon* expressly did *not* address the question now before us (i.e., whether the subpoena was reasonable under the test adopted in *Charnes*) because the record there was insufficient to allow a court to evaluate the reasonableness of the subpoena at issue. *Id.* at 149. Accordingly, *Duhon* is inapposite.

## III. Conclusion

¶38 Because neither the adoption of the Referral Policy nor the referral of McLaughlin to the Board violated the OML or the APA, McLaughlin's contention that the subpoena served on him was void because it was the product of a referral made in violation of the OML and APA is based on a flawed premise and therefore is unpersuasive. Even if the adoption of the Referral Policy and the referral itself

16

violated the OML or the APA, however, we still conclude that the Board's subpoena to McLaughlin had a lawfully authorized purpose because in issuing the subpoena, the Board was acting within the scope of its statutory authority to investigate complaints relating to the conduct of a person licensed or authorized to practice medicine in Colorado and the subpoena was properly tailored to that purpose.

¶39 Accordingly, we reverse the judgment of the division below and remand this case for further proceedings consistent with this opinion.