Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us. Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
November 12, 2019

**2019 CO 92**

**No. 18SC621, <u>Doe v. Colorado Department of Public Health and Environment</u>—Administrative Law—Open Meetings Law—State Administrative Procedure Act—Medical Marijuana.**

Consistent with Medical Marijuana Policy No. 2014-01 (the "Referral Policy"), which the Colorado Department of Public Health and Environment (the "CDPHE") had developed after receiving input from staff of the Colorado Medical Board (the "Board"), the CDPHE referred John Does 1–9 (the "Doctors") to the Board for investigation of unprofessional conduct regarding the certification of patients for the use of medical marijuana. The Doctors then filed the present action, contending, among other things, that (1) the Referral Policy was void because it was developed in violation of the Colorado Open Meetings Law (the "OML"), § 24-6-402, C.R.S. (2019), and (2) both the Referral Policy and the referrals to the Board constituted final agency actions under the State Administrative Procedure Act (the "APA"), §§ 24-4-101 to -108, C.R.S. (2019), and the CDPHE did not follow the procedures outlined therein, thereby rendering both the Referral Policy and the referrals void.

Having not prevailed on these arguments in the court of appeals, the Doctors renew their contentions in the supreme court. The supreme court now concludes that (1) an entire state agency cannot be a "state public body" within the meaning of the OML and therefore the Doctors have not established that the CDPHE violated the OML; (2) the Referral Policy is an interpretive rather than a legislative rule, and therefore it falls within an exception to the APA and was not subject to the APA's rulemaking requirements; and (3) the act of referring the Doctors to the Board did not constitute final agency action and therefore was not reviewable under the APA.

Accordingly, the court affirms the judgment of the division below.

**2019 CO 92**

**Supreme Court Case No. 18SC621**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 16CA2011

**Petitioners:**

John Doe 1, John Doe 2, John Doe 3, John Doe 4, John Doe 5, John Doe 6, John Doe 7, John Doe 8, and John Doe 9,

v.

**Respondents:**

Colorado Department of Public Health and Environment; Jill Hunsaker Ryan, in her official capacity as Executive Director of the Department of Public Health and Environment; Natalie Riggins, in her official capacity as State Registrar and Director of the Medical Marijuana Registry; and Colorado Medical Board.

**Judgment Affirmed**
*en banc*
November 12, 2019

**Attorneys for Petitioners John Does 1-6 and 9:**
Hershey Decker Drake
C. Todd Drake
Carmen N. Decker
Kaylyn Peister
      *Lone Tree, Colorado*

**Attorneys for Petitioners John Does 7 and 8:**
Corry & Associates
Robert J. Corry Jr.

*Denver, Colorado*

**Attorneys for Respondents Colorado Department of Public Health and Environment, Jill Hunsaker Ryan, and Natalie Riggins:**
Philip J. Weiser, Attorney General
Eric R. Olson, Solicitor General
Jennifer L. Weaver, First Assistant Attorney General
Brian N. Morrow, Senior Assistant Attorney General
Corelle M. Spettigue, Senior Assistant Attorney General
Michael D. McMaster, Assistant Solicitor General
*Denver, Colorado*

**Attorneys for Respondent Colorado Medical Board:**
Philip J. Weiser, Attorney General
Christopher P. Beall, Deputy Attorney General
Ashley E. Moller, Senior Assistant Attorney General
Sierra R. Ward, Senior Assistant Attorney General
*Denver, Colorado*

**Attorneys for Amici Curiae Colorado Department of Labor and Employment, Colorado Department of Personnel and Administration, Colorado Department of Local Affairs, Colorado Department of Regulatory Agencies, Colorado Department of Health Care Policy and Financing, Colorado Department of Natural Resources, Colorado Department of Education, Colorado Department of Corrections, Colorado Department of Public Safety, Colorado Department of Agriculture, Colorado Department of Human Services, Colorado Department of the Treasury, Colorado Department of Revenue, Colorado Department of Military and Veterans Affairs, Colorado Department of Transportation, Colorado Department of Higher Education, and Colorado Department of State:**
Philip J. Weiser, Attorney General
David D. Powell, Jr., Deputy Attorney General
Emmy A. Langley, Assistant Solicitor General
John August Lizza, First Assistant Attorney General
Evan P. Brennan, Assistant Attorney General
Natalie L. Powell, Senior Assistant Attorney General
W. Eric Kuhn, Senior Assistant Attorney General
Jake Matter, Assistant Attorney General
Julie Tolleson, First Assistant Attorney General
James Quinn, Senior Assistant Attorney General

Ingrid Barrier, Assistant Attorney General
Billy Seiber, First Assistant Attorney General
Jessica Perrill, Senior Assistant Attorney General
Grant T. Sullivan, Assistant Solicitor General
J. Alan Call, Senior Assistant Attorney General
Kathy Young, First Assistant Attorney General

**Attorney for Amicus Curiae Colorado Municipal League**
Laurel Witt
    *Denver, Colorado*

**JUSTICE GABRIEL** delivered the Opinion of the Court.

¶1 Consistent with Medical Marijuana Policy No. 2014-01 (the "Referral Policy"), which the Colorado Department of Public Health and Environment (the "CDPHE") had developed after receiving input from staff of the Colorado Medical Board (the "Board"), the CDPHE referred John Does 1–9 (the "Doctors") to the Board for investigation of unprofessional conduct regarding the certification of patients for the use of medical marijuana. The Doctors then filed the present action, contending, among other things, that (1) the Referral Policy was void because it was developed in violation of the Colorado Open Meetings Law (the "OML"), § 24-6-402, C.R.S. (2019), and (2) both the Referral Policy and the referrals to the Board constituted final agency actions under the State Administrative Procedure Act (the "APA"), §§ 24-4-101 to -108, C.R.S. (2019), and the CDPHE did not follow the procedures outlined therein, thereby rendering both the Referral Policy and the referrals void.

¶2 Having not prevailed on these arguments in the court of appeals, the Doctors renew their contentions in this court.[1] We now conclude that (1) an entire

---

[1] Specifically, we granted certiorari to review the following issues:

1. Whether the court of appeals correctly held that an entire state agency—here, the Colorado Department of Public Health and Environment—cannot be a "state public body" under the Colorado Open Meetings Law.

4

state agency cannot be a "state public body" within the meaning of the OML and therefore the Doctors have not established that the CDPHE violated the OML; (2) the Referral Policy is an interpretive rather than a legislative rule, and therefore it falls within an exception to the APA and was not subject to the APA's rulemaking requirements; and (3) the act of referring the Doctors to the Board did not constitute final agency action and therefore was not reviewable under the APA.

¶3 Accordingly, we affirm the judgment of the division below.

## I. Facts and Procedural History

¶4 The Colorado Constitution allows patients in lawful possession of a medical marijuana registry identification card to use medical marijuana. Colo. Const. art. XVIII, § 14(2). In order for a patient to obtain such a card, a physician must diagnose the patient as having a debilitating medical condition and must advise the patient, in the context of a bona fide physician-patient relationship, that the patient might benefit from the medical use of marijuana in connection with the patient's debilitating condition. *Id.*

---

2. Whether the court of appeals correctly held that the Department's referral of a physician to the Colorado Medical Board for possible investigation is not a "final agency action" subject to judicial review under the Colorado Administrative Procedure Act.

¶5 Section 25-1.5-106, C.R.S. (2019), in turn, establishes a mechanism for regulating and monitoring the use of medical marijuana in Colorado. As pertinent here, that statute allows the "state health agency" to promulgate rules of administration concerning the implementation of the medical marijuana program and to refer doctors to the Board when it has reasonable cause to believe that a physician has violated section 14 of article XVIII of the state constitution, sections 25-1.5-106(5)(a)–(c), or the rules promulgated by the state health agency pursuant to that statute. § 25-1.5-106(6)(a). By executive order, Governor Bill Owens designated the CDPHE as the "state health agency" described in the Colorado Constitution and the statute. Exec. Order No. D 001 01 (Feb. 5, 2001).

¶6 In 2013, the Colorado State Auditor conducted an audit to assess, among other things, the CDPHE's process for issuing "red cards," which gave individuals access to medical marijuana. As a result of this audit, the Auditor expressed concern that the CDPHE's controls over access to medical marijuana did not provide assurance that only qualified individuals receive red cards. The Auditor thus recommended that the CDPHE work with the Board to determine risk factors that the CDPHE could use to identify potentially inappropriate physician recommendations and to establish guidelines for making referrals to the Board for further investigation.

¶7 Based on the Auditor's recommendation, employees from the CDPHE began drafting guidelines for such physician referrals. As part of this effort, CDPHE staff members held a number of conferences, including several in-person meetings and a number of phone calls with Board staff members. Board members themselves did not participate in any of these meetings or phone calls, and the CDPHE did not provide the public with notice of these meetings or calls.

¶8 At some point after these conferences, the CDPHE adopted the Referral Policy. That Policy provides that the CDPHE will use its statistical reviews of physician medical marijuana recommendations to determine whether reasonable cause exists to refer a physician to the Board for investigation. Factors to be considered include (1) whether a physician has a high caseload as determined by the number of patients for whom medical marijuana is recommended (a high caseload is calculated as 3,521 or more patient recommendations in one year); (2) whether a physician recommended increased plant counts for more than thirty percent of his or her caseload; and (3) whether more than one-third of the physician's patient caseload is under the age of thirty.

¶9 Subsequently, relying on the guidelines set forth in the Referral Policy, the CDPHE referred the Doctors to the Board for investigation, and the Board notified the Doctors of these referrals and requested that the Doctors respond to the allegations contained therein. These notifications generated a number of questions

7

from the Doctors and their attorneys about the Referral Policy, and the Doctors then made open record requests under the Colorado Open Records Act, seeking public records related to, among other things, the Referral Policy.

¶10 Based on information that they obtained in this process, the Doctors brought the present action against, among others, the CDPHE and the Board, alleging, as pertinent here, violations of the OML and the APA in the development of the Referral Policy. The Doctors also sought to enjoin the Board from taking any action against them arising out of the Policy-based referrals.

¶11 The district court ultimately dismissed the Doctors' OML and APA claims against the Board but, on cross-motions for summary judgment, concluded that the CDPHE had violated the OML and the APA in the promulgation and implementation of the Referral Policy. In support of this ruling, the court found that the Policy was developed without providing public notice or holding public meetings and that the CDPHE's referrals of the Doctors to the Board constituted final agency action under the APA.

¶12 The parties cross-appealed, and a division of the court of appeals affirmed the district court's dismissal of the claims against the Board but reversed the district court's rulings on the Doctors' claims against the CDPHE, concluding that the CDPHE had not violated either the OML or the APA. *Doe v. Colo. Dep't of Pub. Health & Env't*, 2018 COA 106, ¶¶ 3, 39, 43, 53, 59, 61, __ P.3d __. With respect to

8

the Doctors' OML claims against the CDPHE, the division reasoned that (1) the OML applies to meetings of two or more members of any "state public body" at which any public business is discussed or at which formal action may be taken; (2) a "state public body" is defined as "any board, committee, commission, or other advisory, policy-making, rule-making, decision-making, or formally constituted body of any state agency"; (3) the legislature did not include "a state agency" in the list of what qualifies as a "state public body"; and (4) the CDPHE cannot be a body of itself. *Id.* at ¶¶ 31–32, 34–36 (quoting section 24-6-402(1)(d)(I)). Therefore, the division determined that the district court had erred in granting summary judgment in favor of the Doctors and against the CDPHE on the Doctors' OML claims. *Id.* at ¶ 39. As to the Doctors' APA claims against the CDPHE, the division concluded that (1) the Referral Policy was an interpretive rule that falls within an exception to the APA because it was not binding on the CDPHE and did not give the CDPHE any new powers and (2) the CDPHE's referrals of the Doctors to the Board did not constitute reviewable final agency action under the APA because the referrals did not determine rights or obligations and no legal consequences flowed therefrom. *Id.* at ¶¶ 49, 54–59.

¶13 The Doctors then sought certiorari, and we granted their petition.

9

## II. Analysis

¶14    We begin by discussing the applicable standard of review.  We then consider section 24-6-402 of the OML and conclude that, under the plain language of that statute, a state agency cannot be a state public body, and therefore the OML does not apply to the CDPHE as a whole.  We then turn to the Doctors' APA claims and conclude that (1) the Referral Policy is an interpretive rule not subject to the rulemaking provisions of the APA and (2) the CDPHE's referrals of the Doctors to the Board did not constitute final agency actions and therefore were not reviewable under the APA.

### A.  Standard of Review

¶15    Statutory interpretation presents a question of law that we review de novo.  *All. for a Safe & Indep. Woodmen Hills v. Campaign Integrity Watchdog, LLC*, 2019 CO 76, ¶ 20, __ P.3d__.  In construing statutes, we seek to give effect to the General Assembly's intent.  *Id.* at ¶ 21.  We read words and phrases in context, according them their plain and ordinary meanings.  *Id.*  If the language is clear, we apply it as written and need not resort to other tools of statutory interpretation.  *Id.*

### B.  The OML

¶16    Section 24-6-402(2)(a) of the OML provides, "All meetings of two or more members of any state public body at which any public business is discussed or at which any formal action may be taken are declared to be public meetings open to

10

the public at all times." Section 24-6-402(1)(d)(I), in turn, defines "state public body," in pertinent part, as "any board, committee, commission, or other advisory, policy-making, rule-making, decision-making, or formally constituted body of any state agency." The question before us is whether the CDPHE is a "state public body" within the meaning of section 24-6-402(1)(d)(I), so as to trigger the requirements of section 24-6-402(2)(a). We conclude that it is not.

¶17    As we read the above-quoted portion of section 24-6-402(1)(d)(I), the phrase "of any state agency" modifies each of the types of bodies that precedes it. Thus, the provision defines a "state public body" to include any board of any state agency, any committee of any state agency, any commission of any state agency, and any other advisory, policy-making, rule-making, decision-making, or formally constituted body of any state agency. *Id.* Were this not the case, the provision would define "state public body" to include any board, committee, or commission regardless of whether these bodies had any connection to the state. Such an interpretation would be inconsistent with the statute's plain language because it would read the words "state" and "public" out of the phrase "state public body."

¶18    Here, the Doctors do not contend that the CDPHE is a board, committee, or commission of any kind, much less a board, committee, or commission of a state agency. Nor can the Doctors successfully assert that the CDPHE is some other

11

kind of advisory, policy-making, rule-making, decision-making, or formally constituted body *of any state agency* because for the Doctors to prevail on such an argument, we would have to conclude that the CDPHE, a state agency, is a body of itself, which would be an absurd result.

¶19 Accordingly, we conclude, as did the division below, that the CDPHE is not a "state public body" and therefore was not subject to the requirements of section 24-6-402(2)(a) of the OML.

¶20 Other provisions of the OML support this conclusion. For example, section 24-6-402(2)(a) provides that only meetings with "two or more members of any state public body" must be public. State agencies as a whole, however, do not generally have "members," which are typically defined to mean "the individuals of whom an organization or a deliberative assembly consists, and who enjoy[] the full rights of participating in the organization—including the rights of making, debating, and voting on motions." *Member*, Black's Law Dictionary (11th ed. 2019). Not every state agency employee has the right to participate in organizational decisions the way the members of a formally created board or commission do. And if every employee of a state agency is deemed to be a member, then an untold number of routine conversations among agency employees would be subject to the OML and would require notice of the meetings, as well as compliance with all

12

of the OML's remaining requirements. The legislature could not have intended so absurd a result.

¶21 Similarly, the OML provisions regarding meeting quorums and executive sessions could not, as a procedural matter, logically apply to an agency as a whole. *See* § 24-6-402(3)(a), (4). We cannot perceive how one would determine a quorum of an entire state agency. Nor can we discern how an entire state agency would go into executive session.

¶22 In reaching these conclusions, we are not persuaded by the cases that the Doctors cite to support their view that the CDPHE's employees are members within the meaning of the OML. None of these cases interpreted the OML, and each of them used the word "member" generically to refer to members of a department's staff or in a context that made clear that the word "member" did not refer to every employee of an agency. *See, e.g.*, *Coffman v. Colo. Common Cause*, 102 P.3d 999, 1002, 1007 (Colo. 2004) (referring to "a member of the [Treasury Department] staff" and "a member or employee of any state agency or department with 'policy-making' responsibilities"); *Graham v. State*, 956 P.2d 556, 563–64 (Colo. 1998) (describing "members of UNC's board of trustees," "faculty members," and "staff members of departments of athletics"). Accordingly, these cases are inapposite.

¶23 Nor are we persuaded by the Doctors' contention that it would be absurd to exclude state agencies from the requirements of section 24-6-402(2)(a). As an initial matter, it is not for this court to opine on the wisdom of the legislature's unambiguous statutory provisions. The Doctors' policy-based quarrel with those provisions is better directed to the legislature. In any event, we perceive no absurdity in the legislature's recognition that state agencies generally enact policies and rules through boards, committees, commissions, and formally constituted bodies, all of which are well-suited to conduct public business through regular meetings with their attendant formalities.

¶24 For these reasons, we conclude that a state agency as a whole cannot constitute a state public body within the meaning of section 24-6-402(1)(d)(I) of the OML, and therefore the Doctors have not established that the CDPHE violated the OML in this case.

## C. The APA

¶25 The Doctors next contend that the CDPHE, by its actions, violated the APA. Notably, although the Doctors' certiorari petition contended only that the CDPHE's referrals of the Doctors to the Board constituted "final agency action" under the APA, both sides appear to have interpreted the question before us as subsuming the preliminary issue of whether the creation of the Referral Policy itself violated the APA, and both sides briefed that issue extensively. Accordingly,

we will address both issues, beginning with the Referral Policy and then turning to the referrals.

## 1. The Referral Policy

¶26 Section 24-4-103(1), C.R.S. (2019), of the APA provides:

> When any agency is required or permitted by law to make rules, in order to establish procedures and to accord interested persons an opportunity to participate therein, the provisions of this section shall be applicable. Except when notice or hearing is otherwise required by law, this section does not apply to interpretive rules or general statements of policy, which are not meant to be binding as rules, or rules of agency organization.

¶27 An interpretive rule "serves the advisory function of explaining the meaning of a word or phrase in a statute or other rule, and describes the type of factors which an agency will consider in future administrative proceedings without, however, binding the agency to a particular result." *Regular Route Common Carrier Conference of the Colo. Motor Carriers Ass'n v. Pub. Utils. Comm'n*, 761 P.2d 737, 748–49 (Colo. 1988). Similarly, language in a policy that "merely reminds parties of existing duties" is interpretive. *Am. Hosp. Ass'n v. Bowen*, 834 F.2d 1037, 1046 (D.C. Cir. 1987); *see also Regular Route*, 761 P.2d at 748 ("Because the 'interpretative' rule exception of section 24-4-103(1) parallels the 'interpretative' rule provision of the Federal Administrative Procedure Act, we may consider federal precedent and other commentary on the federal counterpart to section 24-4-103(1).") (citation omitted). Accordingly, in *Regular Route*, 761 P.2d

15

at 747–49, this court determined that a portion of a Public Utilities Commission rule was interpretive because it only clarified the term "competition" as applied between a contract carrier and a common carrier and provided factors that might be considered in an agency determination.

¶28 A legislative rule, in contrast, is a rule that is "based on an agency's statutory authority to promulgate a substantive standard that carries the force of law." *Regular Route*, 761 P.2d at 748; *see also Hammond v. Pub. Emps.' Ret. Ass'n*, 219 P.3d 426, 428 (Colo. App. 2009) ("Whether a rule is legislative or interpretive depends on its effect: it is legislative if it establishes a norm that commands a particular result in all applicable proceedings; it is interpretive if it establishes guidelines that do not bind the agency to a particular result."). For example, in *Hammond*, 219 P.3d at 427–28, the division concluded that an internal policy of the Public Employees' Retirement Association, which policy determined how a lump-sum payment for unused vacation time would be treated for purposes of calculating retirement benefits, was a legislative rule because it "requires a particular action (and thus achieves a particular result) in all applicable cases."

¶29 Here, the division concluded that the Referral Policy was an interpretive rule, not a legislative one. For several reasons, we agree.

¶30 First, the CDPHE adopted the Referral Policy in order to provide guidelines for determining when the CDPHE should refer physicians to the Board for

investigation, pursuant to the CDPHE's statutory obligation to refer physicians to the Board when it has reasonable cause to believe that a physician has violated applicable medical marijuana laws. *See* § 25-1.5-106(6)(a). The Referral Policy thus sets forth factors that the CDPHE could consider when deciding whether reasonable cause for a referral exists.

¶31 Second, on its face, the language of the Referral Policy is permissive rather than binding. The sections of the Referral Policy that discuss the three criteria (caseload, plant count recommendations, and age demographics) do not require the CDPHE to refer every doctor who exceeds these thresholds. Rather, those sections state that physicians "may be recommended for referral" based on their exceeding the identified thresholds. Further, the Referral Policy states that even if a physician is recommended by the staff, the recommendations are reviewed by higher level officials within the CDPHE to determine if the evidence supports the referral, further indicating that the thresholds are not binding on the CDPHE.

¶32 The Referral Policy thus (1) "serves the advisory function of explaining the meaning of a word or phrase in a statute or other rule" (here, the phrase "reasonable cause") and (2) "describes the type of factors which an agency will consider in future administrative proceedings" by outlining thresholds for caseload, plant counts, and age demographics, "without, however, binding the

17

[CDPHE] to a particular result." *Regular Route*, 761 P.2d at 748–49. Accordingly, we conclude that the Referral Policy is an interpretive rule.

¶33 We are not persuaded otherwise by the Doctors' assertion that the Referral Policy is legislative because it uses the word "will" at several points (e.g., the Referral Policy states that the CDPHE "will identify physicians for referral to the [Board] using the following procedure" and "[i]f evidence supports referral, the Program Director will issue a formal referral to the Medical Board Program Director"). In our view, the use of the word "will" at certain points in the Referral Policy does not alter the fact that overall, the Referral Policy gives the CDPHE discretion to determine whether to refer a physician to the Board if the thresholds set forth in the Policy have been crossed. Moreover, in using the word "will," the Policy appears to be implementing the statutory provision stating that if the CDPHE has reasonable cause to believe that a physician has violated applicable medical marijuana laws, it "*may* refer the matter to the Colorado medical board." § 25-1.5-106(6)(a) (emphasis added). As the court observed in *American Hospital Ass'n*, 834 F.2d at 1046, merely reminding parties of existing duties does not make a policy legislative.

¶34 Nor are we persuaded by the Doctors' reliance on the notices that they received from the Board, which stated that the "physician referral policy dictates that [the CDPHE] will refer physicians who are above the approved threshold[s]."

18

The Doctors do not explain why the Board's interpretation of the CDPHE Referral Policy is controlling, and we have seen no authority supporting a contention that it is.

¶35 For the foregoing reasons we conclude that the Referral Policy is an interpretive rule and therefore falls within an exception to the APA and was not subject to the APA's rulemaking requirements.

## 2. The Referrals to the Board

¶36 Finally, the Doctors contend that the CDPHE's referrals of the Doctors to the Board constituted final agency actions and were therefore subject to the APA. We are not persuaded.

¶37 The APA provides, "Final agency action under this or any other law shall be subject to judicial review." § 24-4-106(2). The APA defines "action" as "the whole or any part of any agency rule, order, interlocutory order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." § 24-4-102(1).

¶38 To be final, agency action must "(1) mark the consummation of the agency's decision-making process and not be merely tentative or interlocutory in nature, and (2) constitute an action by which rights or obligations have been determined or from which legal consequences will flow." *Chittenden v. Colo. Bd. of Soc. Work Exam'rs*, 2012 COA 150, ¶ 26, 292 P.3d 1138, 1143 (citing *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997), which discusses the same criteria for finality of agency action

19

under the federal Administrative Procedure Act); *see also MDC Holdings, Inc. v. Town of Parker*, 223 P.3d 710, 720–21 (Colo. 2010) (stating that a town's decision in a tax refund appeal is a "final decision" if it meets the criteria set forth in *Bennett*).

¶39 Here, as an initial matter, it is not clear to us that the CDPHE's referrals constituted "actions," as that term is defined in the APA. The referrals were not part of a rule, nor could they be construed as orders because in making the referrals, the CDPHE did not order anyone to do anything. And the referrals did not constitute sanctions because the Board, not the CDPHE, is responsible for determining whether the Doctors' conduct merits discipline. *See* § 12-240-125(5)(c), C.R.S. (2019) (setting forth the Board's disciplinary authority).

¶40 Even if the referrals could be deemed "actions" within the meaning of the APA, however, they did not constitute final agency actions, as that phrase has been defined in case law. The referrals merely began the process by which the Board would review the Doctors' conduct. Moreover, the referrals were not actions by which rights or obligations were determined or from which legal consequences flowed. The referrals determined nothing. It is up to the Board to decide whether the matters are to proceed and whether sanctions are appropriate.

¶41 The fact that the legislature has stated that the Board's disciplinary actions may be reviewed by the court of appeals, *see* § 12-240-127, C.R.S. (2019), supports this interpretation. As the legislature has made clear, it is the Board's

20

determination that marks the end of the referral process, and that is the time for judicial review. Such a review would properly focus on the substance of any discipline imposed and would afford parties like the Doctors all of the process that is due them.

¶42 In contrast, allowing the Doctors to change the inquiry from a challenge to any discipline imposed to an attack on the referring party, as appears to be their object here, is inconsistent with the proper role of the Board and, potentially, with the Board's role in ensuring public safety.

¶43 The legislative declaration of the Colorado Medical Practice Act

> declares it to be in the interests of public health, safety, and welfare to enact laws regulating and controlling the practice of the healing arts to the end that the people shall be properly protected against unauthorized, unqualified, and improper practice of the healing arts in this state, and this article 240 shall be construed in conformity with this declaration of purpose.

§ 12-240-102, C.R.S. (2019).

¶44 To carry out these purposes, the legislature created the Board and gave it the authority to "[m]ake investigations, hold hearings, and take evidence in accordance with section 12-20-403 in all matters relating to the exercise and performance of the powers and duties vested in the board." §§ 12-240-105, -106(1)(b), C.R.S. (2019).

¶45 Were we to adopt the position that the Doctors espouse in this case, the focus of the Board's efforts would shift from carrying out its statutory duties of

21

investigating and remedying substantive allegations of improper medical practice to investigating the referral source in every case before pursuing its statutory duties. We perceive no basis for imposing such a requirement on the Board. To the contrary, doing so could potentially jeopardize public health and safety (e.g., by precluding or forestalling legitimate investigations into physician misconduct), thereby undermining the very purposes of the Act. *See* § 12-240-102.

¶46 Accordingly, we conclude that the CDPHE's referrals of the Doctors to the Board did not constitute final agency actions and therefore were not reviewable under the APA.

### III. Conclusion

¶47 For these reasons, we conclude that the CDPHE, as a state agency, is not a "state public body" under the OML, and therefore the Doctors have not established that the CDPHE violated the OML when it adopted the Referral Policy. We further conclude that the Referral Policy is an interpretive rather than a legislative rule, and therefore it falls within an exception to the APA and was not subject to the APA's rulemaking requirements. Finally, we conclude that the CDPHE's referrals of the Doctors to the Board did not constitute final agency actions and therefore were not reviewable under the APA.

¶48 Accordingly, we affirm the judgment of the division below.